IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LEO L. DURAN,

    Plaintiff,

v.                                                                   Case No. 1:09-cv-758 BB/DJS

LESLIE DONALDSON, et al.,

    Defendants.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

By *Order of Reference Relating to Bankruptcy Appeals, Social Security Appeals and Prisoner Cases* [Doc. 4], entered August 6, 2009, this matter was referred to the undersigned to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of the case. For the reasons stated below, the Court recommends *Defendant Lois Bean's Motion and Memorandum in Support of Motion to Dismiss All Civil Rights Claims on the Basis of Qualified Immunity* [Doc. 101], filed September 9, 2011, be **GRANTED**, and that Plaintiff's claims against Defendant Bean be **DISMISSED with prejudice.**

### I.    BACKGROUND

Plaintiff Leo Duran is a *pro se* prisoner litigant. He filed his original complaint pursuant to 28 U.S.C. § 1983 on August 4, 2009, claiming various constitutional violations arising from allegedly inadequate medical treatment and other alleged deprivations while incarcerated at the Curry County Adult Detention Center (CCADC). [Doc. 1.] Through various amendments, the

---

[1]Within fourteen (14) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

operative pleading now consists of the following three documents: Amended Complaint [Doc. 17], a Supplemental Statement [Doc. 21], and a Supplement Complaint [Doc. 33] (collectively "Amended Complaint").

The Amended Complaint covers three separate, noncontinuous time periods of Duran's incarceration at CCADC: (1) November 2007 to May 8, 2008; (2) approximately October 6, 2008 through November 6, 2008; and (3) December 4, 2008 to March 17, 2009. It appears from the pleadings that Duran was incarcerated elsewhere before, between, and after these three time periods during which he was in custody at CCADC.

Duran alleges that Defendant Lois Bean was the CCADC Jail Administrator during the relevant times. [Doc. 17 at 1.] Bean claims qualified immunity and moves to dismiss pursuant to Rule 12(b)(6). [Doc. 101.]

## II.   LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6),[2] the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citation omitted). Plausibility in this context refers to the scope of the allegations: "if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to

---

[2]Because qualified immunity is an affirmative defense that Bean raised in her answer, her motion is more accurately described as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12© rather than a motion for failure to state a claim under Rule 12(b)(6). *Brown v. Montoya*, ___ F.3d ___, 2011 WL 5346064, *3 n.4 (10th Cir. Nov. 8, 2011). The Court uses the same standard when evaluating 12(b)(6) and 12© motions. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n. 2 (10th Cir. 2002).

plausible." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). Because Mr. Duran is pro se, the Court liberally construes the Amended Complaint, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), but does not assume the role of advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

A grant of qualified immunity may be based on failure to state a claim. *See, e.g.*, *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). "There are two parts to the qualified immunity inquiry: first, 'taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" *Estate of Turnbow v. Odgen City*, 386 F. App'x 749, 751–52 (10th Cir. 2010) (unpublished) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If a constitutional right was violated, the second inquiry is whether that constitutional right was clearly established at that time." *Id.* at 752. Courts may exercise sound discretion in deciding which of the two prongs should be addressed first in light of the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Supervisor status by itself is insufficient to support liability; personal participation is an essential allegation. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

### III. FACTS ALLEGED IN THE AMENDED COMPLAINT

Accepting the well-plead allegations as true, the Court discerns the following claims: (1) denial of or delay in providing medical care for a hand injury; (2) denial of or delay in providing mental health services; (3) confinement in isolation; (4) unsanitary or inhumane conditions of confinement; (5) denial of law library access; and (6) failure to adhere to grievance procedures. The facts supporting each claim are summarized below.

### A.  Denial or delay in providing medical care

For purposes of determining whether the Amended Complaint states a constitutional violation for denial of medical care, the hand injury claim breaks down into three separate episodes.

#### 1.  Initial hand injury

Duran suffered a hand injury from an altercation on December 10, 2007, during the first of the three time periods. [Doc. 17 at 3.] Two CCADC nurses examined the injury and decided to send him to Presbyterian Hospital due to the severity of the laceration. [Id. at 23.] He was examined by hospital staff and given one week's worth of antibiotics and a tetanus shot; "dermabond" was used to close the wound which was an inch and a half in length. [Id.]

#### 2.  Subsequent infection

In the days after the initial injury, the pain worsened, the wound re-opened, and an infection developed. [Doc. 17 at 24.] Duran informed Defendants Curtis, Davis,[3] and Donaldson of these developments and asked to be returned to the hospital. [Id.] The first prescription for antibiotics expired on December 17, 2007 and Defendants Donaldson, Curtis, and Davis failed to renew it. [Doc. 17-1 at 3.]

On December 28, 2007, Duran was taken to see Dr. Lindo, presumably a non-CCADC physician, who informed him the wound could not be treated due to the severity of the infection. [Doc. 17-1 at 2–3.] Duran was started on a second round of antibiotics at that time. [Id. at 3.]

On January 4, 2008, Duran was taken to see an orthopedic surgeon, Dr. George. [Doc. 17-1 at 3.] Dr. George ordered another, stronger round of antibiotics; however, Duran did not receive these antibiotics because he was allergic to them. [Id. at 4.] Around this same time, Duran also saw

---

[3]Duran's claims against Davis were voluntarily dismissed on August 22, 2011. [Doc. 96.]

Dr. Timmons about the infection; Dr. Timmons prescribed antibiotics in an attempt to stop the infection. [Id.] Dr. Timmons recommended a bone culture, but Defendants never scheduled the bone culture. [Id.] On January 17, 2008, Dr. Timmons recommended surgery for Duran's hand. [Id. at 5.]

On January 21, 2008, Duran was taken to Dr. Cheema, a University of New Mexico hand surgeon in Albuquerque. [Doc. 17-1 at 5.] Dr. Cheema ordered x-rays and more antibiotics. [Id.] Dr. Cheema said surgery would be needed after the infection cleared and asked to see Duran again in four to six weeks for a final evaluation. [Id.] Duran's hand was still bothering him on April 2, 2008. [Id. at 7–8.] Duran was transferred out of CCADC on May 8, 2008. [Doc. 17 at 5.] He claims delay in treating the infection caused him to suffer pain, bone deterioration, and permanent injury. [Id. at 26; Doc. 17-1 at 3.]

### 3. Reconstructive surgery

Duran returned to CCADC on December 4, 2008 (the third time period). [Doc. 17-1 at 10.] Prior to his return, when he was incarcerated elsewhere, he had missed an appointment for reconstructive surgery at UNM Hospital. [Id.] When Duran arrived at CCADC, he informed Davis of the need to re-schedule the surgery. [Id. at 11.] An appointment at UNM Hospital was scheduled for December 12, 2008, but had to be re-scheduled for an unknown reason. [Id. at 12.]

The surgical appointment was rescheduled for December 30, 2008. [Doc. 17-1 at 12–13.] Duran did not receive the surgery on that day because his transportation from CCADC to the hospital was overridden in favor of court-related transports, or because Defendant Bean refused to allow the transport on the allegedly false grounds that Duran was an escape risk. [Id.] Duran filed a grievance against Defendant Bean for failing to transport him to the hospital for the reconstructive surgery. [Id. at 13.]

On March 17, 2009, Duran was transferred out of CCADC without the reconstructive surgery having been performed. [Doc. 17-1 at 13.] He claims Bean's refusal to transport him to his scheduled surgery was an unconstitutional denial of medical care that resulted in "a permanent injury that is deforming, aching, and useless when grasping tightly." [Doc. 17 at 7.]

### B.     Denial or delay in providing mental health services

Liberally construed, the Amended Complaint alleges mental health services were denied or delayed during each of the three time periods. Duran claims to suffer from "severe anxiety attacks and anger, a depressing mood and mentally ill state of mind." [Doc. 17 at 6–7.] Upon arrival at CCADC in November 2007, he requested mental health services from Defendant Curtis. [Id. at 28.] Duran wanted to see his psychiatrist and have his prescription medication adjusted because it was causing side effects resulting in anxiety and anger. [Id. at 27–28.] As a result of Defendant Curtis' alleged failure to provide or arrange for mental health services, Duran says he "lost control of the situation resulting in physical and mental injuries resulting in Constitutional violations of deprivation of inmate's rights." [Id. at 28, Doc.17-1 at 1.]

Duran eventually received counseling after writing to a judge. [Doc. 17-1 at 1.] He claims the delay in treatment caused "months of anxiety attacks and bi-polar attack resulting in current incarceration." [Doc. 17-1 at 17.]

### C.     Placement in isolation

Duran claims that while he was in CCADC awaiting trial, Bean and unknown defendants placed him in isolation without due process for approximately 11 to 12 months. [Doc. 17-1 at 13, 14, 18.] He alleges he and others were placed in isolation "as a way to deal with mentally ill inmates." [Id. at 15.] Because he was in the isolation pod, he was denied privileges available to the general population such as TV, access to the canteen, and the use of writing materials. [Doc. 17 at

6

5.] Duran claims he was placed in isolation for purposes of punishment or discipline. [Id.]

### D. Unsanitary and inhumane conditions

Duran alleges unsanitary conditions in the isolation pod, specifically, the throwing of feces by other inmates on a daily basis for over a year. [Doc. 17 at 4.] He alleges jail staff or trustee inmates "would clean the area every few days leaving the area contaminated for days at a time resulting in all jail employees deliberately neglecting isolation inmates." [Doc. 17-1 at 15.] He claims the unsanitary conditions contributed to his infection, and that defendants knew about the open wound on his hand but made no attempt to move him into the medical pod away from the unsanitary conditions in the isolation pod. [Doc. 17 at 6.]

### E. Denial of law library access

Duran claims he was denied access to a law library or law books and as a result he was unable to seek injunctive relief against the defendants for their alleged indifference to his medical needs. [Doc. 17 at 7–8; Doc. 17-1 at 16–17.]

### F. Failure to adhere to grievance procedures

Duran alleges "[d]etention officials violate the grievance policy by not assigning a griev[ance] officer to hear/investigate and resolve the grievance." [Doc. 17-1 at 19.] He further alleges that Bean ignored his grievances and failed to respond to them within 15 days as required. [Id. at 19–21.]

## IV. ANALYSIS

Duran apparently concedes certain deficiencies in the Amended Complaint, describing it as "hopelessly inadequate and ill prepared." [Doc. 109 at 4.] He nevertheless opposes the dismissal of claims against Bean and seeks leave to amend. [Doc. 110.] The Court therefore proceeds to the merits of Bean's motion to dismiss.

The Court concludes Bean is entitled to qualified immunity because the Amended Complaint fails to state a constitutional claim against her. Having resolved the qualified immunity issue on the first prong, the Court need not proceed to the second prong of the analysis (whether the law was clearly established).

### A. Denial or delay in providing medical care

Duran claims the denial of medical care violated his Eighth Amendment rights. Though not entirely clear, the inference from the pleadings is that Duran was a pretrial detainee at the relevant times. If so, his claims for inadequate medical care arise under the due process clause of the Fourteenth Amendment which provides "the same degree of protection regarding medical attention as that afforded convicted criminals under the Eighth Amendment." *Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992) (citation omitted); *see also Lopez v. LeMaster* 172 F.3d 756, 759 n.2 (10th Cir. 1999) (analysis of pretrial detainee's claims under Fourteenth Amendment is identical to analysis of claims under Eighth Amendment).

To state a cognizable claim of this type, a prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference involves both an objective and a subjective component." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) (citation and quotation marks omitted). The objective component is met "if the deprivation is 'sufficiently serious'—that is, if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (citation and quotation marks omitted). The subjective component is satisfied "if an officer knows of and disregards an excessive risk to a detainee's health or safety. Essentially, the officer must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference." *Id.* (citation, quotation marks, and brackets omitted).

### 1.     Initial hand injury

For purposes of this analysis, the Court assumes the initial hand injury qualifies as a serious medical need. This claim nevertheless should be dismissed because it fails the subjective component: there is no indication anyone treated the injury with indifference. Duran alleges CCADC nurses examined the injury the day it occurred and decided to send him to the hospital because of its severity.

### 2.     Subsequent infection

The Court also assumes the infection that subsequently developed qualifies as a serious medical need. As with the initial injury, however, there is no indication that any defendants, including Bean, were indifferent.

An official does not act with deliberate indifference unless the official is (1) aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) also draw the inference. *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir.2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In the six weeks following the initial injury, Duran was taken to see outside physicians and prescribed antibiotics on at least three occasions. He nevertheless alleges that delays in receiving antibiotics contributed to the development of infection. One delay occurred when the first prescription expired and was not renewed for approximately a week between appointments. Another delay occurred when it was discovered Duran had an allergy to the prescribed antibiotics.

None of these allegations rise to the level of a constitutional violation. Any delay that occurred between appointments does not establish that defendants were deliberately indifferent. Duran does not describe any objective symptoms he manifested that would have alerted any

defendant that he required more frequent treatment than he was afforded. At a January 2008 visit, Dr. Cheema allegedly noted the presence of infection, ordered additional antibiotics, and recommended a followup visit in four to six weeks. The inference to be drawn from the fact that Dr. Cheema did not need to see Duran any sooner than four weeks is that if the infection was still present, the risks it posed were not so obvious or acute that any defendant should have been alerted to the need for expedited treatment.[4]

This claim fails against Bean for the additional reason that the Amended Complaint does not allege she was personally aware of the infection. Finally, although Duran alleges his hand was still bothering him on April 2, 2008, the facts alleged do not show he was suffering a serious medical need at that time.

### 3. Reconstructive surgery

Construed liberally, the Amended Complaint alleges Defendants failed to transport Duran to UNM Hospital for two scheduled appointments for reconstructive surgery in December 2008. Duran alleges Bean was aware of the appointments and personally made the decision to deny transport. These facts fail to state a constitutional claim because reconstructive surgery, as alleged here, is not a serious medical need.

"A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)

---

[4] In accordance with the applicable standard, the Court construes the facts in Duran's favor. However, the Court notes that Duran's allegation in the Amended Complaint that the infection continued throughout January 2008 is inconsistent with the exhibits attached to it. A "Final Report" on January 21, 2008, verified by Dr. Cheema, states that antibiotics had "taken care of the infection," that Duran was "in no acute distress," and that the wound to his right ring finger was "well healed." [Doc. 17-5 at 15.] The Final Report also states that Dr. Cheema's recommendation at that time was physical therapy and range of motion exercises, not reconstructive surgery. [Id.]

(quotation marks and citations omitted). Duran allegedly suffered a deformity in his right ring finger and reduced grip strength that reconstructive surgery would have corrected. He alleges reconstructive surgery had been scheduled, but he does not plausibly allege reconstructive surgery was mandated or anything other than elective.

### B.     Mental health services

Duran claims he suffers from mental disorders and that mental health services were provided in a delayed manner during each of the three time periods covered by the Amended Complaint. The Court discerns no allegations that implicate Bean in this claim or from which an affirmative link to Bean can be inferred; she is therefore entitled to dismissal of this claim. *See Mitchell,* 80 F.3d at 1441 (holding personal participation is an essential allegation for § 1983 claim).

### C.     Placement in isolation

Duran alleges Bean is personally responsible for placing him in isolation without due process for a period of 11 to 12 months, and that because he was in isolation he was denied access to privileges available to the general population, such television and canteen. Assuming Duran was a pretrial detainee, the proper inquiry is whether the restrictions amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

Effective management of the jail facility "is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Bell*, 441 U.S. at 540. A pretrial detainee may be placed in isolation to maintain prison discipline because a detention center has a legitimate interest in segregating individual inmates from the general population for nonpunitive reasons. *See id.* ("Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the

detainee would not have experienced had he been released while awaiting trial.").

Duran's allegation that he was placed in isolation "for purposes of discipline" lacks sufficient specificity for the Court to conclude he has stated a plausible constitutional violation. Duran does not explain what conduct Bean or the other Defendants were punishing or why he believes he was being punished.

Context is important when determining plausibility. *Gee v. Pacheco*, 627 F.3d 1178, 1185 (10th Cir. 2010) (citing *Iqbal*, 556 U.S. 662 (2009)). The allegation that isolation was used as punishment is inconsistent with other allegations that isolation was used to segregate mentally ill inmates such as Duran. Duran claims he suffered from mental health issues that caused him to become involved in an altercation with another inmate leading to the hand injury that is the subject of this litigation. In context with these allegations, the inference to be drawn is that Duran was placed in isolation to protect his safety and that of other inmates. The well-plead allegations do not plausibly allege that Duran was being punished.

**D.      Unsanitary and inhumane conditions**

Duran alleges the conditions in the isolation pod were unsanitary for days at a time between cleanings and that the unsanitary conditions contributed to his infection. Conditions of confinement for pretrial detainees are scrutinized under the Due Process Clause of the Fifth and Fourteenth Amendments. *Bell*, 441 U.S. at 535 & n.16 (1979). To hold a prison official personally liable for violating an inmate's right to humane conditions of confinement, a plaintiff must satisfy two requirements. First, the deprivation alleged must be objectively "sufficiently serious" such that the inmate is deprived of "the minimal civilized measure of life's necessities." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (citations and quotation marks omitted). Second, the official must have a "sufficiently culpable state of mind," which in this context means the official must

exhibit "deliberate indifference" to a substantial risk of serious harm to an inmate. *Id.* The second, subjective, component is satisfied only if the "official knows of and disregards an excessive risk to inmate health and safety." *Id.* (quoting *Farmer*, 511 U.S. at 837). Bean is entitled to dismissal of this claim because the Court discerns no allegations that implicate her personally in the alleged unsanitary condition or from which an affirmative link to Bean can be inferred.

### E. Denial of law library access

Duran alleges he was denied the use of the law library to pursue injunctive relief. Pretrial detainees have a constitutional right to adequate, effective, and meaningful access to the courts. *Love v. Summit County*, 776 F.2d 908, 912 (10th Cir. 1985). To state a claim for violation of this right, a confined plaintiff must allege facts indicating: (1) a denial of legal resources, and (2) that the denial of such resources hindered his efforts to pursue a nonfrivolous claim. *Friedman v. Kennard*, 248 F. App'x 918, 921 (10th Cir. 2007) (unpublished).

The right of access to the courts does not entail a constitutional right to a law library. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). Thus, Duran does not state a claim by alleging he was denied access to a law library and law books in the absence of any allegations that he was denied other resources. *See, e.g.*, *Friedman*, 248 F. App'x at 921 (detainee failed to state a claim for denial of access to courts where jail officials provided court forms upon request).

Even if Duran had stated a plausible claim for denial of legal resources, the claim fails for the independent reason that the pleadings contain no facts from which it could be inferred that he was inhibited from pursuing a nonfrivolous claim. Based on the Court's recommended disposition of his claims for denial of medical care, there is no reason to believe Duran's proposed claim for injunctive relief would have been anything other than frivolous.

### F. Grievance procedures

Duran alleges Defendants, including Bean, failed to timely respond to his grievances and otherwise failed to adhere to grievance procedures. Assuming the truth of these allegations, the Court nevertheless concludes they fail to state a constitutional claim.

Because inmates do not have a constitutionally-protected liberty interest in accessing prison grievance procedures, allegations that prison officials did not adhere to grievance procedures do not state an independent constitutional claim. *Boyd v. Werholtz*, No. 10-3284, 2011 WL 4537783, *1 (10th Cir. Oct. 3, 2011) (citations omitted) (observing that prison grievance procedure is a procedural right only). Failure to exhaust administrative remedies is not at issue on Bean's motion to dismiss and Duran does not claim Bean's alleged failure to entertain or respond to his grievances inhibited his right of access to the courts. Therefore, his allegations that Bean did not respond to grievances in a timely manner does not state a constitutional violation. *See Boyd*, 2011 WL 4537783 at *1 (holding that inmate does not state a claim where any alleged deprivation of the prison grievance process fails to implicate right of access to courts) (quoting *Flick v. Alba*, 932 F.2d 728, 279 (8th Cir. 1991)).

## V. AMENDMENT WOULD BE FUTILE

Duran responds to Bean's motion to dismiss by seeking leave to amend. [Doc. 110.] After examining the allegations against Bean in Duran's proposed amended complaint, the Court concludes amendment would be futile because the amended claims against Bean also would be subject to dismissal. The Court therefore recommends the claims against Bean be dismissed with prejudice and that leave to amend against Bean be denied.

### A. Denial or delay in providing medical care

The proposed amended complaint clarifies that Bean did not become warden of the facility

until the third time period—from December 4, 2008 to March 17, 2009. [Doc. 110-3 at 23.] Duran therefore cannot state a claim against Bean for alleged medical deprivations for the initial hand injury and the subsequent infection, both of which occurred during the first time period.

In the proposed amended complaint, Duran continues to allege that Bean is responsible for denying him transport to his scheduled reconstructive surgery during the third time period. [Doc. 110-1 at 7; Doc. 110-3 at 23–24, 27.] These renewed allegations do nothing to remedy the fatal flaw that reconstructive surgery on his right ring finger was "elective"—by definition not a serious medical need. [Doc. 110-3 at 27.]

The proposed amended complaint includes new allegations that Bean adhered to an inmate handbook that was constitutionally inadequate. Duran claims the policy contained in the handbook is inadequate because it directs inmates to contact an officer if they believe they are becoming seriously ill and then leaves it to allegedly untrained officers to decide whether to summon medical attention. [Doc. 110-1 at 4, 5.]

The Court concludes these allegations do not state a claim against Bean. During the approximately 3½-month period that Bean's tenure as warden overlapped with Duran's incarceration at CCADC, Duran did not experience a serious illness requiring immediate medical attention. Accordingly, he suffered no harm as a result of any alleged inadequacy in the handbook policy.

**B.  Denial or delay in providing mental health services**

The proposed amended complaint includes extensive allegations regarding Duran's mental health history. It chronicles his successful and unsuccessful attempts to obtain treatment for psychiatric issues while incarcerated, and between periods of incarceration. There is no need to summarize the exhaustive and detailed allegations because the relevant allegations against Bean are few. During Duran's third stay at CCADC, when Bean was warden, his psychiatric needs

15

"fortunately...did not require or constitute the need for emergency care." [Doc. 110-2 at 23.] The Court therefore concludes the proposed amended complaint fails to allege Duran suffered from an objectively serious psychiatric need during the time Bean was warden.

### C. Placement in isolation

The proposed amended complaint alleges Duran was a pretrial detainee during the time relevant to Defendant Bean's tenure. [Doc. 110-3 at 28.] The proposed amended complaint strengthens the inference that isolation was not used as unconstitutional punishment but as a means of maintaining jail security. Duran appears to have dropped the contention that his placement in isolation was punitive and readily admits he suffers from mental disorders that cause him to engage in assaultive behavior such that altercations and injury result when he is in contact with other inmates. [Doc. 110-2 at 14–15.] He alleges that upon his third return to CCADC, Bean was continuing the custom of using isolation to house those with mental illnesses solely "out of not having adequate space, psychological treatments and programs for the mentally ill." [Doc. 110-1 at 7; Doc. 110-2 at 23, 33.] The Court concludes these allegations do not state a constitutional violation. *Bell*, 441 U.S. at 540 ("Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial.")

### D. Unsanitary and inhumane conditions

The proposed amended complaint is also more specific regarding the allegedly unsanitary conditions in the isolation pod. Duran states that upon his third return to CCADC, Bean had painted the jail an "eerie gray" but the isolation hall was clean, apparently because the inmate responsible for throwing feces had been "disciplined in some way." [Doc. 110-2 at 23.]

16

The proposed amended complaint makes new allegations regarding noise levels in the isolation pod. Duran complains the isolation hall did not offer "noise barriers" and he was regularly disturbed by noise from the kitchen area, such as the sound of carts rolling over tile and the sound of food trays banging against trash containers. [Doc. 110-2 at 37.] The noise was more frequent if the trays required extra banging because the food was sticky. [Id.]

The Court concludes the proposed amended complaint does not state a claim against Bean for inhumane conditions of confinement. The allegations regarding noise from the kitchen fall short of stating a claim of serious deprivation. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (objective component requires the alleged deprivation be "sufficiently serious"); *see also Barney*, 143 F.3d at 1311 (jail conditions may be "restrictive and even harsh" without violating constitutional rights) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981)). Furthermore, according to the allegations in the proposed amended complaint, the unsanitary conditions had been resolved by Duran's third stay.

### E. Inadequate law library

The proposed amended complaint alleges the law library was inadequate because it did not contain the New Mexico Rules Annotated nor any forms other than forms to aid inmates litigating criminal proceedings. [Doc. 110-2 at 28.] The harm Duran alleges is that he had to "set aside his pro se filed 'paternity case' in 2008 for lack of litigation [and as a result] Plaintiff's biological daughter was then unable to receive social security benefits." [Id.] According to the allegations in the proposed amended complaint, Bean is responsible because she exercised budget control. [Id. at 29.]

These allegations fail to state a claim against Bean because they do not state a cognizable injury, nor do they allege unconstitutional denial of access to the courts. Duran has no constitutional

17

right to litigate on behalf of a third person (his daughter). *Whitington v. Ortiz*, 307 F. App'x 179, 191 (10th Cir. 2009) (prisoner lacks standing to sue directly or indirectly on behalf of anyone but himself). Furthermore, a prison's "affirmative duty to assist inmates' access to courts (by, for example, creating and providing access to law libraries) is implicated only by challenges to conviction and matters relating to confinement; as for other legal matters, prison officials need only avoid obstructing inmates' own efforts to access the courts." *Shupe v. Wyo. Dept. of Corrs.*, 290 F. App'x 164, 167 (10th Cir. 2008) (citation omitted). Duran does not allege Bean obstructed his efforts to access the courts.

Duran alleges Bean is responsible for implementing an inmate handbooks that "does not offer inmates their fundamental right to the court for redress of constitutional rights violations." [Doc. 110-2 at 26.] The Court liberally construes this allegation to mean that the inmate handbook does not contain a section on the law library.

The Constitution does not require that prisoners be able to conduct generalized research, but only that they be able to present their grievances to the courts. *Lewis*, 518 U.S. at 359. The Court concludes the mere failure of the inmate handbook to address library access does not state a constitutional violation. *See Whitington*, 307 F. App'x at 191 (prisoner lacks standing to attempt to re-regulate entire prison system). Duran does not connect this purported deficiency to any injury particular to him.

## VI.     CONCLUSIONS AND RECOMMENDATIONS

The Court concludes the Amended Complaint [Docs. 17, 21, 33] fails to state a constitutional claim against Defendant Lois Bean. The Court further concludes, upon examining the proposed amended complaint [Doc. 110-1 through 110-3] that amendment would be futile. The Court therefore recommends that *Defendant Lois Bean's Motion and Memorandum in Support of Motion*

*to Dismiss All Civil Rights Claims on the Basis of Qualified Immunity* [Doc. 101], filed September 9, 2011, be **GRANTED**, and that Plaintiff's claims against Defendant Bean be **DISMISSED with prejudice.**

_____
**DON J. SVET**
**United States Magistrate Judge**