# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

LEO L. DURAN,

    **Plaintiff,**

v.                                                               **No. 09-cv-0758 MCA/SMV**

CURRY CNTY. ADULT DET. CTR. et al.,

    **Defendants.**

### MAGISTRATE JUDGE'S
### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Defendant Dr. Donaldson's Motion for Summary Judgment and Memorandum in Support [Docs. 181, 182] (collectively, "Motion" or "MSJ"), filed on September 6, 2012.  Plaintiff[1] responded on October 26, 2012, [Doc. 194], and Defendant Donaldson replied on December 3, 2012, [Doc. 202].  The case was referred to the undersigned by the Honorable M. Christina Armijo, Chief United States District Judge, on September 26, 2012, for analysis and a recommended disposition.  [Doc. 189].  Having reviewed the record, the briefing, and the relevant law, and being otherwise fully advised in the premises, I RECOMMEND that the Motion [Doc. 181] be GRANTED, that [Docs. 201, 206, 208, 216][2] be DENIED as moot, and that all claims against Defendant Donaldson be DISMISSED with prejudice.

---

[1] At all times relevant to this suit, Plaintiff has been incarcerated and is proceeding pro se and *in forma pauperis*. *See* Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 [Doc. 1] ("Complaint"); Order [Doc. 3].

[2] The parties filed several other motions regarding the authentication of the exhibits attached to Plaintiff's Response to the MSJ.  [Docs. 201, 206, 208, 216].  These motions should be denied as moot because their resolution is not necessary to ruling on the MSJ.

### Background

Plaintiff Leo Duran is a pro se prisoner litigant.  He filed his original complaint pursuant to 28 U.S.C. § 1983 on August 4, 2009, claiming various constitutional violations arising from allegedly inadequate medical treatment and other alleged deprivations while incarcerated at the Curry County Adult Detention Center (CCADC).  [Doc. 1].  Through various amendments, the operative pleading now consists of the Proposed Amended Complaint [Doc. 145] (as amended by [Doc. 162] magistrate judge's recommendations on same) (collectively "Amended Complaint").  The Amended Complaint raises two Eighth Amendment claims against Defendant Donaldson:  (1) denial of or delay in providing medical care for a hand injury, and (2) denial of or delay in providing mental health services.

Defendant Donaldson denies the allegations and argues that he is entitled to summary judgment as a matter of law.  First, he claims that he is entitled to qualified immunity because he is a state actor under § 1983.  [Doc. 182] at 3.  Second, he claims that he is entitled to summary judgment because there is no evidence that he was "deliberately indifferent" to Plaintiff's medical needs.  *Id*. at 4.

I. ### Qualified Immunity

A.  ### The Law Regarding Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).  When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that (1) the defendant violated a

constitutional right and (2) the constitutional right was clearly established.  *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009).

### B.  Analysis

Plaintiff objects to Defendant Donaldson's assertion of qualified immunity on the grounds that Defendant did not raise the defense in his Answer and did not timely raise it. [Doc. 194] at 1–2 (citing to [Docs. 13, 18] (Donaldson's answers to earlier versions of the complaint)).  Plaintiff is incorrect.  Defendant Donaldson raised qualified immunity in his Answer to the Amended Complaint.  [Doc. 176] at 3.  It is true that the Answer was not filed until three years into the lawsuit, but that delay is wholly attributable to Plaintiff, who took that time to repeatedly amend and append his complaint.  *See* [Doc. 162] at 8–9 (discussing delay).

Plaintiff also challenges Defendant Donaldson's assertion of qualified immunity on the grounds that Defendant is a "private" physician—as opposed to one employed by the State—and, therefore, may not raise qualified immunity.  [Doc. 194] at 8 (citing *Hinson v. Edmond*, 192 F.3d 1342, 1345–47 (11th Cir. 1999) (expanding the Supreme Court's ruling in *Richardson v. McKnight*, 521 U.S. 399 (1997), which held that privately employed prison guards were not eligible to raise the defense of qualified immunity, to hold that privately employed prison physicians were not eligible to raise the defense of qualified immunity)).  Defendant Donaldson responds that because he "worked as a physician at the CCADC and provided medical care to those incarcerated by the State[, he] is a state actor [and, therefore,] is entitled to dismissal . . . because of his qualified immunity to suit."  [Doc. 202] at 4 (citing *West v. Atkins*, 487 U.S. 42, 54 (1988) (holding that State-employed physicians who treat inmates, act under color of state law and, therefore, are vulnerable to suit under § 1983)).  Essentially, Defendant Donaldson

3

argues that because he is a state actor and can be sued under § 1983, *ipso facto*, he is entitled to raise the defense of qualified immunity. *See* [Doc. 202] at 4.

Unfortunately, Defendant Donaldson does not directly address the crux of Plaintiff's argument: That because Defendant is privately employed, rather than employed by the State, he cannot raise qualified immunity, regardless of whether he is a state actor or can be sued under § 1983. *See id.* It is Defendant's burden to show that he is entitled to the defense. *See Koch v. Shell Oil Co.*, 52 F.3d 878, 880 (10th Cir. 1995) (on motion for summary judgment, defendant has the burden of proof on an affirmative defense); *Rosewood Servs. v. Sunflower Diversified Servs.*, No. 02-2140-JWL, 2003 U.S. Dist. LEXIS 15836, at 69 (D. Kan. Sept. 8, 2003) (unpublished) ("[T]he rebuttable presumption of qualified immunity . . . does not exist when the defendant is a private party. Thus, a private party defendant has the burden to establish that it is entitled to assert the qualified immunity defense."). Defendant has not met his burden. However, that is not the end of the analysis.

Plaintiff's argument against qualified immunity rests on *Hinson*, 192 F.3d at 1345–47, an Eleventh Circuit case, which of course, is not binding on this Court. I have found no Tenth Circuit decision directly addressing the issue. *See generally Weise v. Casper*, 507 F.3d 1260 (10th Cir. 2007) (recognizing but failing to reach the issue). Therefore, I would not go as far as Plaintiff urges. I would decline to rule on whether privately employed prison doctors can raise qualified immunity in the Tenth Circuit. Instead, I recommend granting the Motion on traditional summary judgment grounds since the claims against Defendant Donaldson can be resolved irrespective of qualified immunity.

4

II.    <u>**Plaintiff's Eighth Amendment Claims**</u>

A.  <u>**The Summary Judgment Standard**</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If this burden is met, the party opposing summary judgment must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Although all facts are construed in favor of the nonmoving party, it is still the nonmoving party's responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

The Court liberally construes Plaintiff's filings because he is appearing pro se. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Nevertheless, a non-moving party must still "identify specific facts that show the existence of a genuine issue of material fact." *Munoz v. St. Mary-Corwin Hosp.,* 221 F.3d 1160, 1164 (10th Cir. 2000) (internal quotation marks omitted). Conclusory allegations are insufficient to establish an issue of fact that would defeat the motion. *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 557 (10th Cir. 2001).

### B.  The Standard for Eighth Amendment Claims

Duran claims the denial of or delay in providing medical care violated his Eighth Amendment rights.  An Eighth Amendment claim of deliberate indifference to serious medical needs requires the plaintiff to demonstrate "both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  To satisfy the objective component, "[t]he prisoner must first produce evidence that the deprivation at issue was in fact sufficiently serious."  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotation marks omitted). That is, Plaintiff's medical condition must have been diagnosed by a physician as mandating treatment, or be so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002); *see also Weatherford v. Taylor*, No. 09-7018, 347 F. App'x 400, 403 (10th Cir. Oct. 5, 2009) (unpublished) (severe chest pain and a subsequent fatal heart attack meets the objective prong); *Mata*, 427 F.3d at 753 (severe chest pain, non-fatal heart attack, and damage to heart could meet objective component, assuming causation had been established).  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006) (internal quotation marks omitted).  "A complaint about an inadvertent failure to provide adequate medical care or that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."  *Id.* (internal quotation marks omitted).

The Tenth Circuit Court of Appeals has stated:

> To satisfy the objective component of a deliberate indifference claim arising under the Eighth Amendment, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension."  *Self v. Crum*, 439 F.3d

1227, 1230 (10th Cir. 2006). "[T]he purpose for this requirement is to limit claims to significant, as opposed to trivial, suffering." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005). Consequently, we look to the alleged injury claimed by the prisoner, and ask "whether that harm is sufficiently serious." *Id.*

When the prisoner's Eighth Amendment claim is premised on an alleged delay in medical care, the prisoner must "show that the delay resulted in substantial harm." *Oxendine v. Kaplan*, 241 F.3d, 1272, 1276 (10th Cir. 2001) (internal quotation marks omitted). That "substantial harm" can be the ultimate physical injury caused by the prisoner's illness, so long as the prisoner can show that the more timely receipt of medical treatment would have minimized or prevented the harm. *See Mata*, 427 F.3d at 753. The "substantial harm" can also be an intermediate injury, such as the pain experienced while waiting for treatment and analgesics. *Id.* Although "not every twinge of pain suffered as a result of delay in medical care is actionable," when the pain experienced during the delay is substantial, the prisoner "sufficiently establishes the objective element of the deliberate indifference test." *Sealock*, 218 F.3d at 1210.

*Kikumura*, 461 F.3d at 1292.

Even where there is a sufficiently serious medical need, however, delayed "medical care rises to the level of an Eighth Amendment violation only if the plaintiff can show that the delay resulted in substantial harm." *Sealock*, 218 F.3d at 1210. That is, the Plaintiff must prove causation. *Daniels v. Gilbreath*, 668 F.2d 477, 488–89 (10th Cir. 1982). To establish the requisite causal link between the delay and the alleged harm, "expert testimony is not required in cases where the jury can determine from the non-expert evidence presented whether the delay caused additional harm." *King v. Patt*, No. 12-4107, 2013 US App LEXIS 9492, at *24 (10th Cir. May 10, 2013) (unpublished). However an expert is required where "the effects of delay may be so subtle or complex that a lay jury cannot adequately determine the issue of causation without expert assistance." *Id.*

7

The subjective component requires "evidence of the prison official's culpable state of mind," which may be fulfilled by showing that the official "[knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference." *Id.* (brackets and internal quotation marks omitted). "To prevail on the subjective component, the prisoner must show that the defendant[ ] knew [that the prisoner] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (internal quotation marks omitted). The pertinent question is whether the prisoner's symptoms were such that the defendant "knew the risk to the prisoner and chose (recklessly) to disregard it[.]" *Mata*, 427 F.3d at 753. "Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Mere negligence is not enough. *Id.*

### C.  The Undisputed Material Facts

1.  On December 10, 2007, Plaintiff was incarcerated at the Curry County Adult Detention Center (CCADC), when he punched another inmate and injured his own hand. [Doc. 182] at 1; [Doc. 194] at 2.

2.  Plaintiff was immediately seen by nurses at CCADC's medical facility. After his wound was cleaned and wrapped, he was taken to the Plains Regional Medical Center (PRMC) for further treatment. [Doc. 182] at 1–2; [Doc. 194] at 3.

3.  A physician at PRMC examined Plaintiff and ordered a tetanus shot, antibiotics, and medical Dermabond. [Doc. 182] at 2; [Doc. 194] at 3.

4.  Plaintiff was seen by an orthopedic specialist, Dr. George, on January 4, 2008. Dr. George prescribed more antibiotics and took a culture of the infection on Plaintiff's knuckle. [Doc. 182] at 2; [Doc. 194] at 3.

5. On January 17, 2008, Plaintiff was seen by Dr. Timmons, who prescribed more antibiotics.  [Doc. 182] at 2; [Doc. 194] at 3.

6. Plaintiff saw Dr. Cheema at University of New Mexico ("UNM") Hospital on January 21, 2008, and Dr. Cheema's notes reflect that the "right ring finger presents with a longitudinal wound over the metacarpophalangeal joint, which appears to be well healed."  [Doc. 194-3] at 8.

7.  Defendant Donaldson examined Plaintiff on April 2, 2008, and did not recommend any further treatment for the finger.  [Doc. 182] at 2; *see* [Doc. 194] at 4.

8. While Plaintiff was incarcerated at CCADC, Defendant Donaldson ordered refills of Plaintiff's psychiatric mediations.  [Doc. 145] at 11; [Doc. 194] at 5.

9. Plaintiff was transferred to the New Mexico Department of Corrections at Los Lunas on May 8, 2008.  [Doc. 182] at 3; [Doc. 194] at 5.

### D.  Background Facts Regarding Hand Injury

Duran suffered a hand injury from an altercation with another inmate on December 10, 2007.  [Doc. 145] at 16.  He cut his finger on the other inmate's teeth.  *Id.* at 17.  Two CCADC nurses examined the cut, cleaned it thoroughly with Peroxide, and, due to the severity of the laceration, decided to send him to Plains Regional Medical Center ("PRMC") for further treatment.  *Id.*  At PRMC, he was examined by a Dr. Kamermans.  *Id.*  Dr. Kamermans examined the wound, ordered X-rays and a tetanus shot, and gave a prescription for antibiotics.[3] *Id.*  Dermabond, a liquid adhesive, was used to close the wound, which was an inch and a half in length.  *Id.*

In the days after the initial injury, the pain worsened, the wound re-opened, and an infection developed.  *Id.* at 18.  Duran informed Defendants Curtis, Davis,[4] and Donaldson of

---

[3] Plaintiff claims that Dr. Kamermans ordered "one week[']s worth of antibiotics."  *See* [Doc. 145] at 17. However, Plaintiff's Medication Record form CCADC indicates that the regimen of antibiotics was "complete" after four days.  *See* [Doc. 194-2] at 37 (reflecting that Plaintiff received Keflex on December 11, 2007, Bactrim on December 12–14, 2007, and Avelox on December 17, 2007).

[4] Duran's claims against Davis were voluntarily dismissed on August 22, 2011.   [Doc. 96].

these developments and asked to be returned to the hospital.  *Id.*  Plaintiff claims that he showed his hand to Defendant Donaldson two or three days after his visit with Dr. Kamermans, and Defendant Donaldson replied, "It's just pus but your [sic] on antibiotics, and if I can't see you today I'll just see you next Thursday."  *Id.*  Plaintiff would have still been receiving the antibiotics prescribed by Dr. Kamermans at that time.  *See* [Doc. 194-2] at 37.

On the day after the alleged encounter with Defendant Donaldson, a nurse at CCADC took Plaintiff into the medical exam room.  [Doc. 145] at 19.  She examined the wound, cleaned it, and re-closed it with Dermabond.  *Id.* at 19–20.  Plaintiff alleges that his antibiotic prescription was not renewed until "eleven days after the first weeks prescription ended."  *Id.* at 21.

The next Thursday (Defendant Donaldson's normal day to see patients at CCADC) would have been December 20, 2007.  On that day, however, Plaintiff was taken to court for arraignment.  *Id.* at 20.  He did not see Defendant Donaldson on December 20.

Plaintiff claims he was taken to a "substandard health clinic" where he was seen by a Dr. Lindo.[5]  *Id.* at 23.  Plaintiff claims that Dr. Lindo prescribed antibiotics for him, *id.*, and he started on Clindamycin a few days after his visit with Dr. Lindo, [Doc. 194-2] at 38.  Dr. Lindo also referred Plaintiff to Dr. George, an orthopedic surgeon.  [Doc. 145] at 23–24.

Although the Court could not find a medical record for that visit, the records do reflect that Plaintiff was Plaintiff was taken to see Dr. George on January 4, 2008.  *Id.* at 24;

---

[5] The Court was unable to identify any record of that visit among the many medical records Plaintiff has attached to various pleadings.

[Doc. 194-3] at 4 (Dr. George's office note of January 4, 2008).  Dr. George's office note for that

visit reads, in pertinent part, as follows:

> This young man presents today as a self-referral regarding his right
> hand problem. . . . While incarcerated, he punched another inmate
> with the right hand, sustaining a laceration from the teeth on the
> dorsum of his hand. . . . He was given two separate rounds of
> antibiotics. . . . Now he has a growth in this area. . . .
>
> **ORTHOPEDIC EXAMINATION**: . . . . On the dorsum
> overlying the MP joint of the middle finger, there is a
> cauliflower-like granulomatous mass radial to the extensor tendon
> with serous drainage from around it. . . . The middle finger goes
> from about 10° short of full extension to terminal flexion of about
> 75-80. The PIP/DIP joint range of motion is still reasonable. . . .
>
> **RADIOGRAPHIC EXAMINATION**: . . . Repeat x-rays
> done now show loss of articular cartilage in the joint, erosive
> changes in the metacarpal head.

[Doc. 194-3] at 4.  Dr. George debrided and cauterized the growth and applied a Betadine

dressing.  *Id*.  He also recommended a consultation with a hand surgeon regarding the possibility

of reconstructive surgery.  *Id*.  It does not appear that he ordered any antibiotics.  *See id*.

Plaintiff did eventually see a hand surgeon.  Before that took place, however, on

January 17, 2008, he was seen by Dr. Timmons, an infectious disease specialist.  [Doc. 145]

at 24.  Dr. Timmons' note for that visit read, in pertinent part:

> On [physical exam] he has healing laceration [on] dorsum right
> hand [with] loss of 4th right metatarsal head.  No fever noted.  No
> drainage.  We searched for a [bone culture] report without success.
> I started him on Flagyl for anaerobes.

[Doc. 194-3] at 7.  Dr. Timmons recommended a bone culture, but one was never scheduled.

[Doc. 145] at 25.  Dr. Timmons also recommended that Duran be seen by an orthopedic hand

specialist for possible surgery.  *Id*.

On January 21, 2008, Duran was seen by Dr. Aboka, a UNM hand surgeon in Albuquerque.[6] [Doc. 194-3] at 8–9. Dr. Aboka ordered x-rays, noted that the antibiotics "appeared to have taken care of the infection," and described the fracture as being "well healed." *Id.* at 8. He noted that Plaintiff had "some residual tenderness to palpation over the area, and some limitation in range of motion." *Id.* He prescribed a final course of antibiotics and asked Plaintiff to return again in four to six weeks for a final evaluation. *Id.* He also ordered that Plaintiff be sent to the Physical Therapy Department so that they could demonstrate some range-of-motion exercises he could perform while in jail. *Id.*

On April 2, 2008, Plaintiff saw Defendant Donaldson in his office at the jail. [Doc. 145] at 26. Defendant Donaldson noted that the infection was "clearing up [and] looks well healed," *id.*, which was consistent with Dr. Aboka's notes, *see* [Doc. 194-3] at 8. Defendant Donaldson did not recommend any further treatment for Plaintiff's finger because he felt that none was necessary. Defendant Donaldson's Undisputed Material Fact No. 7, [Doc. 182] at 2.

Plaintiff was transferred out of CCADC on May 5, 2008. [Doc. 145] at 27–28. X-rays were taken of his hand on June 2, 2008. *See* [Doc. 194-3] at 10. The record is unclear as to who ordered them. The radiologist's impression was "Cortical irregularity at the distal 4th metacarpal *suggestive of either post-traumatic or infectious etiology*[]. . . . No acute fracture, subluxation or soft tissue swelling noted." *Id.* (emphasis added). The hand was x-rayed again

---

[6] Plaintiff claims that he was seen by Dr. Tahseen Cheema. *See, e.g.,* [Doc. 145] at 25–26. However, the UNM records indicate that the physician who actually saw Plaintiff was Dr. Aboka, most likely a surgical resident. *See* [Doc. 194-3] at 8. Dr. Aboka later discussed the patient with Dr. Cheema, an Associate Professor in the Department Of Orthopedics, and Dr. Cheema "verified" Dr. Aboka's record of the visit. *Id.*

on June 11, 2008.  *Id.* at 11.  The radiologist's impression was "Mild interphalangeal joint

space narrowing without fracture, subluxation or discernible soft tissue swelling."  *Id.*

Plaintiff was seen again at UNM on September 15, 2008.  [Doc. 145] at 28.  He was

apparently seen by two surgeons, Dr. Tripuraneni and Dr. Cheema.  *See* [Doc. 194-3] at 12.

Dr. Tripuraneni's note for that visit reads, in pertinent part, as follows:

> HISTORY: . . . He is complaining of pain and decreased
> ability to grip with his right hand.
>
> PHYSICAL EXAM: Examination of the right hand reveals
> shortened metacarpal on the right ring finger without any
> tenderness to palpation.  He is unable to have full flexion of his
> MCP joint of the right ring finger lacking about 20 degrees of
> flexion.  His grip strength has decreased compared to the
> contralateral side, unable to assess grip strength objectively today,
> as the grip strength meter was not working. . . .
>
> IMPRESSION: This is a 40-year-old right-hand dominant
> gentleman with right ring metacarpophalangeal degenerative joint
> disease . . .

*Id.*  After consultation with Dr. Cheema, Dr. Tripuraneni prescribed surgery to replace the MCP

joint.  *Id.*  Plaintiff claims that the surgery was scheduled for December 1, 2008, [Doc. 145]

at 28, but that fact is not clear from either the UNM medical records, *see* [Doc. 194-3] at 13,[7] or

the records from CCADC, *see, e.g.*, [Doc. 17-4] at 6 (Plaintiff's request to use the telephone on

December 10, 2008, to schedule an appointment at UNM).  It does appear that surgery was

scheduled for December 29, 2008.[8]  *See* [Doc. 194-3] at 16.  However, that appointment was

missed because the jail was unable to transport him on that date.  *Id.*  Although it appears that the

jail intended to reschedule his appointment, *see id.* ("Your appointment will be rescheduled

---

[7] The record indicates an appointment for December 1, 2008, at 2:00 p.m.  However, it does not say it is an
appointment for surgery.  No pre-surgical instructions are given, and 2:00 p.m. seems an odd time for a surgical
appointment.

[8] Plaintiff was returned to CCADC on December 4, 2008.  *[Doc. 145] at 28.*

today 12-30-08."), it does not appear that the surgery was ever scheduled.  He claims that there was a delay in treating the infection that caused him to suffer pain, bone deterioration, and permanent injury.  *Id.*

Plaintiff filed his original complaint on August 4, 2009.  [Doc. 1].  He has attempted to amend it six different times.  *See* [Doc. 162] at 2–7 (recounting the procedural history).  Finally, on July 16, 2012, an operative complaint was identified when the Sixth Motion to Amend was granted in part and denied in part.  [Doc. 145] at 6–47 (operative complaint as amended by [Doc. 162] (magistrate judge's recommendations on same)).  Plaintiff asserts two claims against Defendant Donaldson:  "Deliberate Indifference to [the Need for] Medical Care" (claim A) and "Deliberate Indifference to [the Need for] Psychiatric Care" (claim B).  [Doc. 145] at 6–47 (operative complaint as amended by [Doc. 162] (magistrate judge's recommendations on same)).  Plaintiff asserts that Defendant Donaldson was deliberately indifferent to his serious medical needs in the following ways:

1. Refusing to see Plaintiff after being advised that the wound had reopened;

2. Refusing to send Plaintiff back to the emergency room after being advised that the would had reopened and had obvious signs of infection;

3. Refusing to supervise the distribution of Plaintiff's antibiotics;

4. Refusing to ensure that Plaintiff's "bone cult" was completed;

5. Refusing to ensure that his subordinate nurse, Defendant Curtis, arranged for physical therapy;

6. Refusing to follow Dr. Cheema's treatment plan and return Plaintiff to UNM for final evaluation;

7. Altering Plaintiff's medical records;

8. Failing to supervise Defendant Curtis in the "continuous course of sealing Plaintiff's wound[;]"

9.  Refusing to timely treat Plaintiff's infected wound;

10. Refusing to house Plaintiff in the jail medical pod after learning of the subsequent infection and, instead, leaving Plaintiff in "inhumane conditions[;]"

11. Refusing to prescribe pain medications "consistant [sic] with infection disease pains[;]" and

12. Failing to follow Dr. Cheema's prescribed treatment plan.

[Doc. 145] at 32–35.  Plaintiff alleges that these failures resulted in pain and an inability "to enjoy the benefits of controlling his anxiety through lifting weights, playing handball and softball as his grasping ability is weak in the injured area." *Id.* at 29.

**E.  Analysis Regarding Hand Injury**

Defendant Donaldson is entitled to summary judgment because there is no genuine dispute as to any material fact.  It is undisputed that Plaintiff was treated immediately after he cut his hand on December 10, 2007.  It is undisputed that he was seen by specialists for the subsequent infection and that, by January 21, 2008, Dr. Aboka, one of the specialists, had determined that it was "well healed."  It is also undisputed that Defendant Donaldson examined Plaintiff's hand on April 2, 2008, and agreed that the hand was healed.  Defendant has established that there is an absence of evidence to support Plaintiff's case, which shifts the burden to Plaintiff.  Plaintiff has not shown the existence of any element essential to his case.  Plaintiff's alleged harms—decrease in grip strength and pain—do not meet the objective prong of the Eighth Amendment standard.  Furthermore, Plaintiff has failed to produce any evidence whatsoever that could establish that Defendant Donaldson's alleged failures *resulted in* Plaintiff's alleged harm.  Additionally, no reasonable jury could find, taking the facts in the light

most favorable to Plaintiff, that Defendant Donaldson acted with the requisite state of mind to meet the subjective prong.

Regarding the objective component of the medical care claim, Plaintiff alleges that he endured "further injury and needless physical and emotional pain and injury [as well as] pain when grasping and the inability to enjoy vigorous exercise" because of Defendant Donaldson's inaction. [Doc. 145] at 32–35.  Plaintiff seems to claim that because of Defendant Donaldson's failures, Plaintiff suffered pain for some time due to the infection and now has decreased grip strength and pain when grasping.  I find that there is no genuine issue of material fact regarding whether Plaintiff's alleged harm was sufficiently serious to be cognizable under the Eighth Amendment.  The alleged harm—pain and decreased grip strength—does not rise to the level of a constitutional violation.  Because the undisputed facts establish that Plaintiff received immediate and ongoing treatment for his hand injury and the subsequent infection, and because Plaintiff fails to show that his alleged harm meets the objective prong of the Eighth Amendment standard, Defendant Donaldson is entitled to summary judgment in his favor.

More importantly, however, Plaintiff has failed to present any evidence beyond his own conjecture that Defendant Donaldson's actions (or inactions) *caused* Plaintiff's alleged harm.  It is true that, in certain circumstances, a jury can reasonably find causation based on non-expert evidence.  *King*, 2013 US App LEXIS 9492, at *24.  Here, however, Plaintiff fails to present *any* evidence—expert or non-expert—on which a jury could reasonably rely in finding causation. There is absolutely no evidence from which a reasonable jury could conclude that Plaintiff's result would have been any different but for Defendant Donaldson's conduct.  The resultant harm might have been caused by the original injury.  *See* [Doc. 194-3] at 11 (June 2, 2008 x-ray

findings "suggestive of either post-traumatic or infectious etiology[]").   One of the several specialists who treated Plaintiff might have prescribed the wrong medication, or in the wrong dosage, or for the wrong time period.   Or the final result might simply be the natural consequence of the infection, regardless of how it was treated.   The pertinent fact is that Plaintiff can point to nothing that lays the blame for his condition on Defendant Donaldson.   The fact that an inmate may prefer or believe that another course of treatment was warranted is not evidence of a constitutional violation.   *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999).   Accordingly, Defendant Donaldson is entitled to summary judgment on Plaintiff's claims regarding the treatment of his hand injury.

### F.  Analysis Regarding Psychiatric Care

Plaintiff asserts that Defendant Donaldson was deliberately indifferent to his serious psychiatric needs in the following ways:

1.  Refusing to "personally evaluate Plaintiff's complaints of serious anxiety and mood changes."

2.  Refusing to implement adequate procedures and policies to provide timely and emergency psychiatric care to inmates, including Plaintiff.

3.  Failing to ensure adequate monitoring of Plaintiff's psychotropic medications.

[Doc. 145] at 36.  Plaintiff contends that because of Defendant Donaldson's failures, Plaintiff's "mental disorder reached emergency proportion's [sic] resulting in [his] striking another inmate causing severe injures[.]"  *Id.* at 16.

The Court need not lay out the course of Plaintiff's psychiatric treatment in the same detail as it did with Plaintiff's hand injury.  There is no doubt that Plaintiff suffers from one or more mental illness.  Nor is there any doubt that Plaintiff was dissatisfied with the care he

received while incarcerated at CCADC. He filed numerous grievances complaining that he was not getting his medications, or that he was getting the wrong medication, or that he wanted to stop his current medications and try something different. However, his claim is simply that, because his condition went untreated, he struck another prisoner. *Id*. This is insufficiently serious to meet the objective prong of the Eighth Amendment standard. *See Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).

Similarly, regarding Plaintiff's claim for deliberate indifference to his psychiatric needs, the undisputed material facts establish that Defendant Donaldson prescribed psychiatric medications for Plaintiff. [Doc. 145] at 11; [Doc. 194] at 5. Likewise, Plaintiff's medical records indicate that he was being prescribed psychiatric medications throughout his incarceration. *See generally* [Docs. 194-2 and 194-3] (medical records attached to Plaintiff's Response to the MSJ). "[A] mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). There is no evidence that Defendant Donaldson was aware of and disregarded an excessive risk to Plaintiff's health or safety with respect to his psychiatric condition.

Plaintiff's other allegations are immaterial because they fail to raise a genuine issue of material fact as to this claim. *See* [Doc. 145] at 36. For example, Plaintiff does not present any evidence establishing that Defendant Donaldson failed to "personally evaluate Plaintiff's complaint of serious anxiety and mood swings," [Doc. 145] at 36, or that such failure *resulted in* harm to Plaintiff. Nor has Plaintiff offered any evidence to show that Defendant Donaldson failed "to ensure adequate monitoring of Plaintiff's psychotropic medication's [sic]." *Id.*

Plaintiff alleges that "[a]s a result of . . . Donaldson . . ., Plaintiff assaulted another inmate and received serious physical injuries, emotional injuries, and loss of liberty." [Doc. 145] at 37. Importantly, however, Plaintiff presents no evidence whatsoever—beyond his own conjecture— that the alleged failures by Defendant Donaldson *caused* Plaintiff to assault the other inmate. *See King*, 2013 US App LEXIS 9492, at *24. No reasonable jury could find such causation based on the record currently before the Court; Plaintiff's bare allegations are not sufficient. Because there is no genuine issue as to any *material* fact, Defendant Donaldson is entitled to summary judgment.

**IT IS THEREFORE RESPECTFULLY RECOMMENDED** that Defendant Dr. Donaldson's Motion for Summary Judgment [Doc. 181] be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that [Docs. 201, 206, 208, 216] be **DENIED as moot**, and that all claims against Defendant Donaldson be **DISMISSED with prejudice**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

**STEPHAN M. VIDMAR**
**United States Magistrate Judge**