## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

LEO L. DURAN,

     **Plaintiff,**

v.                                      **No. 09-cv-0758 MCA/SMV**

CURRY CNTY. ADULT DET. CTR. et al.,

     **Defendants.**

## ORDER ADOPTING MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on the Magistrate Judge's Proposed Findings and Recommended Disposition [Doc. 238], issued on July 29, 2013. On reference by the Court, [Doc. 189], the Honorable Stephan M. Vidmar, United States Magistrate Judge, recommended granting Defendant Dr. Donaldson's Motion for Summary Judgment and Memorandum in Support [Docs. 181, 182] (collectively, "Motion" or "MSJ"), filed on September 6, 2012. Judge Vidmar further recommended denying as moot several motions related to the authentication of exhibits attached to Plaintiff's Response to the MSJ [Docs. 201, 206, 208, 216]. Plaintiff objected to the PF&RD on August 19, 2013. [Doc. 241]. Having reviewed de novo the portions of the PF&RD to which Plaintiff objected, the Court finds that the Objections [Doc. 241] should be overruled, the PF&RD [Doc. 238] should be adopted, the MSJ [Doc. 181] should be granted, Defendant Donaldson and all claims against him should be dismissed with prejudice, and the motions related to the MSJ [Docs. 201, 206, 208, 216] should be denied as moot.

## I.  <u>Background</u>

Plaintiff Leo Duran is a pro se prisoner litigant.  He filed his original complaint pursuant to 28 U.S.C. § 1983 on August 4, 2009, claiming various constitutional violations arising from allegedly inadequate medical treatment and other alleged deprivations while incarcerated at the Curry County Adult Detention Center (CCADC).  [Doc. 1].  Through various amendments, the operative pleading now consists of the Proposed Amended Complaint [Doc. 145] (as amended by [Doc. 162] magistrate judge's recommendations on same) (collectively "Sixth Amended Complaint").  The Sixth Amended Complaint raises two Eighth Amendment claims against Defendant Donaldson:  (1) denial of or delay in providing medical care for a hand injury, and (2) denial of or delay in providing mental health services.

Defendant Donaldson denies the allegations and argues that he is entitled to summary judgment as a matter of law.  First, he claims that he is entitled to qualified immunity because he is a state actor under § 1983.  [Doc. 182] at 3.  Second, he claims that he is entitled to summary judgment because there is no evidence that he was "deliberately indifferent" to Plaintiff's medical needs.  *Id*. at 4.

## II.  <u>The Summary Judgment Standard</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled as a matter of law."  F<small>ED</small>. R. C<small>IV</small>. P. 56(a).  The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If this burden is met, the party opposing summary judgment

must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Although all facts are construed in favor of the nonmoving party, it is still the nonmoving party's responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

The Court liberally construes Plaintiff's filings because he is appearing pro se. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Nevertheless, a non-moving party must still "identify specific facts that show the existence of a genuine issue of material fact." *Munoz v. St. Mary-Corwin Hosp.,* 221 F.3d 1160, 1164 (10th Cir. 2000) (internal quotation marks omitted). Conclusory allegations are insufficient to establish an issue of fact that would defeat the motion. *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 557 (10th Cir. 2001).

### III. <u>The Standard for Eighth Amendment Claims</u>

Duran claims the denial of or delay in providing medical care violated his Eighth Amendment rights. An Eighth Amendment claim of deliberate indifference to serious medical needs requires the plaintiff to demonstrate "both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). To satisfy the objective component, "[t]he prisoner must first produce evidence that the deprivation at issue was in fact sufficiently serious." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotation marks omitted). That is, Plaintiff's medical condition must have been diagnosed by a physician as mandating treatment, or be so obvious that even a lay person would easily recognize the necessity for a

doctor's attention. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002); *see also Weatherford v. Taylor*, No. 09-7018, 347 F. App'x 400, 403 (10th Cir. Oct. 5, 2009) (unpublished) (severe chest pain and a subsequent fatal heart attack meets the objective prong); *Mata*, 427 F.3d at 753 (severe chest pain, non-fatal heart attack, and damage to heart could meet objective component, assuming causation had been established). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006) (internal quotation marks omitted). "A complaint about an inadvertent failure to provide adequate medical care or that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* (internal quotation marks omitted).

The Tenth Circuit Court of Appeals has stated:

> To satisfy the objective component of a deliberate indifference claim arising under the Eighth Amendment, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). "[T]he purpose for this requirement is to limit claims to significant, as opposed to trivial, suffering." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005). Consequently, we look to the alleged injury claimed by the prisoner, and ask "whether that harm is sufficiently serious." *Id.*

> When the prisoner's Eighth Amendment claim is premised on an alleged delay in medical care, the prisoner must "show that the delay resulted in substantial harm." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (internal quotation marks omitted). That "substantial harm" can be the ultimate physical injury caused by the prisoner's illness, so long as the prisoner can show that the more timely receipt of medical treatment would have minimized or prevented the harm. *See Mata*, 427 F.3d at 753. The "substantial harm" can also be an intermediate injury, such as the pain experienced while waiting for treatment and analgesics. *Id.* Although "not every twinge of pain suffered as a result of delay in medical care is actionable," when the pain experienced during the

> delay is substantial, the prisoner "sufficiently establishes the objective element of the deliberate indifference test." *Sealock*, 218 F.3d at 1210.

*Kikumura*, 461 F.3d at 1292.

Even where there is a sufficiently serious medical need, however, delayed "medical care rises to the level of an Eighth Amendment violation only if the plaintiff can show that the delay resulted in substantial harm." *Sealock*, 218 F.3d at 1210.   That is, the Plaintiff must prove causation.   *Daniels v. Gilbreath*, 668 F.2d 477, 488–89 (10th Cir. 1982).   To establish the requisite causal link between the delay and the alleged harm, "expert testimony is not required in cases where the jury can determine from the non-expert evidence presented whether the delay caused additional harm."   *King v. Patt*, No. 12-4107, 2013 US App LEXIS 9492, at *24 (10th Cir. May 10, 2013) (unpublished).   However an expert is required where "the effects of delay may be so subtle or complex that a lay jury cannot adequately determine the issue of causation without expert assistance."   *Id.*

The subjective component requires "evidence of the prison official's culpable state of mind," which may be fulfilled by showing that the official "[knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference."   *Id.* (brackets and internal quotation marks omitted).   "To prevail on the subjective component, the prisoner must show that the defendant[ ] knew [that the prisoner] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."   *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (internal quotation marks omitted).   The pertinent question is whether the prisoner's symptoms were such that the

defendant "knew the risk to the prisoner and chose (recklessly) to disregard it[.]"  *Mata*, 427

F.3d at 753.  "Eighth Amendment liability requires 'more than ordinary lack of due care for the

prisoner's interests or safety.'"  *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley*

*v. Albers*, 475 U.S. 312, 319 (1986)).  Mere negligence is not enough.  *Id.*

## IV. <u>PF&RD</u>

Judge Vidmar found the following undisputed material facts.  [Doc. 238] at 8–9.

1. On December 10, 2007, Plaintiff was incarcerated at the Curry County Adult Detention Center (CCADC), when he punched another inmate and injured his own hand. [Doc. 182] at 1; [Doc. 194] at 2.

2. Plaintiff was immediately seen by nurses at CCADC's medical facility.  After his wound was cleaned and wrapped, he was taken to the Plains Regional Medical Center (PRMC) for further treatment.  [Doc. 182] at 1–2; [Doc. 194] at 3.

3. A physician at PRMC examined Plaintiff and ordered a tetanus shot, antibiotics, and medical Dermabond.  [Doc. 182] at 2; [Doc. 194] at 3.

4. Plaintiff was seen by an orthopedic specialist, Dr. George, on January 4, 2008. Dr. George prescribed more antibiotics and took a culture of the infection on Plaintiff's knuckle.  [Doc. 182] at 2; [Doc. 194] at 3.

5. On January 17, 2008, Plaintiff was seen by Dr. Timmons, who prescribed more antibiotics.  [Doc. 182] at 2; [Doc. 194] at 3.

6. Plaintiff saw Dr. Cheema at University of New Mexico ("UNM") Hospital on January 21, 2008, and Dr. Cheema's notes reflect that the "right ring finger presents with a longitudinal wound over the metacarpophalangeal joint, which appears to be well healed."  [Doc. 194-3] at 8.

7. Defendant Donaldson examined Plaintiff on April 2, 2008, and did not recommend any further treatment for the finger.  [Doc. 182] at 2; *see* [Doc. 194] at 4.

8. While Plaintiff was incarcerated at CCADC, Defendant Donaldson ordered refills of Plaintiff's psychiatric mediations.  [Doc. 145] at 11; [Doc. 194] at 5.

9. Plaintiff was transferred to the New Mexico Department of Corrections at Los Lunas on May 8, 2008.  [Doc. 182] at 3; [Doc. 194] at 5.

A.   Background Facts Regarding Hand Injury

Judge Vidmar further laid out the following background.  [Doc. 238] at 9–15.  Duran

suffered a hand injury from an altercation with another inmate on December 10, 2007.

[Doc. 45] at 16.  He cut his finger on the other inmate's teeth.  *Id.* at 17.  Two CCADC nurses

examined the cut, cleaned it thoroughly with Peroxide, and, due to the severity of the

laceration, decided to send him to Plains Regional Medical Center ("PRMC") for further

treatment.  *Id.*  At PRMC, he was examined by a Dr. Kamermans.  *Id.*  Dr. Kamermans

examined the wound, ordered X-rays and a tetanus shot, and gave a prescription for

antibiotics.[1] *Id.*  Dermabond, a liquid adhesive, was used to close the wound, which was an

inch and a half in length.  *Id.*

In the days after the initial injury, the pain worsened, the wound re-opened, and an

infection developed.  *Id.* at 18.  Duran informed Defendants Curtis, Davis,[2] and Donaldson of

these developments and asked to be returned to the hospital.  *Id.*  Plaintiff claims that he

showed his hand to Defendant Donaldson two or three days after his visit with

Dr. Kamermans, and Defendant Donaldson replied, "It's just pus but your [sic] on antibiotics,

and if I can't see you today I'll just see you next Thursday."  *Id.*  Plaintiff would have still

been receiving the antibiotics prescribed by Dr. Kamermans at that time.  *See* [Doc. 194-2]

at 37.

On the day after the alleged encounter with Defendant Donaldson, a nurse at CCADC

took Plaintiff into the medical exam room.  [Doc. 145] at 19.  She examined the wound,

---

[1] Plaintiff claims that Dr. Kamermans ordered "one week['']s worth of antibiotics."  *See* [Doc. 145] at 17.
However, Plaintiff's Medication Record form CCADC indicates that the regimen of antibiotics was "complete" after
four days.  *See* [Doc. 194-2] at 37 (reflecting that Plaintiff received Keflex on December 11, 2007, Bactrim on
December 12–14, 2007, and Avelox on December 17, 2007).
[2] Duran's claims against Davis were voluntarily dismissed on August 22, 2011.   [Doc. 96].

cleaned it, and re-closed it with Dermabond.  *Id.* at 19–20.  Plaintiff alleges that his antibiotic prescription was not renewed until "eleven days after the first weeks prescription ended."  *Id.* at 21.

The next Thursday (Defendant Donaldson's normal day to see patients at CCADC) would have been December 20, 2007.  On that day, however, Plaintiff was taken to court for arraignment.  *Id.* at 20.  He did not see Defendant Donaldson on December 20.

Plaintiff claims he was taken to a "substandard health clinic" where he was seen by a Dr. Lindo.[3]  *Id.* at 23.  Plaintiff claims that Dr. Lindo prescribed antibiotics for him, *id.*, and he started on Clindamycin a few days after his visit with Dr. Lindo, [Doc. 194-2] at 38.  Dr. Lindo also referred Plaintiff to Dr. George, an orthopedic surgeon.  [Doc. 145] at 23–24.

Although Judge Vidmar could not find a medical record for that visit, he found that the records do reflect that Plaintiff was Plaintiff was taken to see Dr. George on January 4, 2008.  *Id.* at 24; [Doc. 194-3] at 4 (Dr. George's office note of January 4, 2008).  Dr. George's office note for that visit reads, in pertinent part, as follows:

> This young man presents today as a self-referral regarding his right hand problem. . . . While incarcerated, he punched another inmate with the right hand, sustaining a laceration from the teeth on the dorsum of his hand. . . . He was given two separate rounds of antibiotics. . . . Now he has a growth in this area. . . .
>
> **ORTHOPEDIC EXAMINATION**: . . . . On the dorsum overlying the MP joint of the middle finger, there is a cauliflower-like granulomatous mass radial to the extensor tendon with serous drainage from around it. . . . The middle finger goes from about 10° short of full extension to terminal flexion of about 75-80. The PIP/DIP joint range of motion is still reasonable. . . .

---

[3] Judge Vidmar was unable to identify any record of that visit among the many medical records Plaintiff has attached to various pleadings.

> **RADIOGRAPHIC EXAMINATION**: . . . Repeat x-rays
> done now show loss of articular cartilage in the joint, erosive
> changes in the metacarpal head.

[Doc. 194-3] at 4.   Dr. George debrided and cauterized the growth and applied a Betadine

dressing.  *Id*.  He also recommended a consultation with a hand surgeon regarding the possibility

of reconstructive surgery.  *Id*.  It does not appear that he ordered any antibiotics.  *See id.*

Plaintiff did eventually see a hand surgeon.  Before that took place, however, on

January 17, 2008, he was seen by Dr. Timmons, an infectious disease specialist.  [Doc. 145]

at 24.  Dr. Timmons' note for that visit read, in pertinent part:

> On [physical exam] he has healing laceration [on] dorsum right
> hand [with] loss of 4th right metatarsal head.  No fever noted.  No
> drainage.  We searched for a [bone culture] report without success.
> I started him on Flagyl for anaerobes.

[Doc. 194-3] at 7.   Dr. Timmons recommended a bone culture, but one was never scheduled.

[Doc. 145] at 25.   Dr. Timmons also recommended that Duran be seen by an orthopedic hand

specialist for possible surgery.  *Id*.

On January 21, 2008, Duran was seen by Dr. Aboka, a UNM hand surgeon in

Albuquerque.[4]  [Doc. 194-3] at 8–9.   Dr. Aboka ordered x-rays, noted that the antibiotics

"appeared to have taken care of the infection," and described the fracture as being "well

healed."  *Id*. at 8.  He noted that Plaintiff had "some residual tenderness to palpation over the

area, and some limitation in range of motion."  *Id*.  He prescribed a final course of antibiotics

and asked Plaintiff to return again in four to six weeks for a final evaluation.  *Id*.  He also

---

[4] Plaintiff claims that he was seen by Dr. Tahseen Cheema.  *See, e.g.,* [Doc. 145] at 25–26.  However, the
UNM records indicate that the physician who actually saw Plaintiff was Dr. Aboka, most likely a surgical resident.
*See* [Doc. 194-3] at 8.  Dr. Aboka later discussed the patient with Dr. Cheema, an Associate Professor in the
Department Of Orthopedics, and Dr. Cheema "verified" Dr. Aboka's record of the visit.  *Id*.

ordered that Plaintiff be sent to the Physical Therapy Department so that they could demonstrate some range-of-motion exercises he could perform while in jail.  *Id.*

On April 2, 2008, Plaintiff saw Defendant Donaldson in his office at the jail. [Doc. 145] at 26.  Defendant Donaldson noted that the infection was "clearing up [and] looks well healed," *id.*, which was consistent with Dr. Aboka's notes, *see* [Doc. 194-3] at 8. Defendant Donaldson did not recommend any further treatment for Plaintiff's finger because he felt that none was necessary.  Defendant Donaldson's Undisputed Material Fact No. 7, [Doc. 182] at 2.

Plaintiff was transferred out of CCADC on May 5, 2008.  [Doc. 145] at 27–28.  X-rays were taken of his hand on June 2, 2008.  *See* [Doc. 194-3] at 10.  The record is unclear as to who ordered them.  The radiologist's impression was "Cortical irregularity at the distal 4th metacarpal *suggestive of either post-traumatic or infectious etiology*[]. . . . No acute fracture, subluxation or soft tissue swelling noted."  *Id.* (emphasis added).  The hand was x-rayed again on June 11, 2008.  *Id.* at 11.  The radiologist's impression was "Mild interphalangeal joint space narrowing without fracture, subluxation or discernible soft tissue swelling."  *Id.*

Plaintiff was seen again at UNM on September 15, 2008.  [Doc. 145] at 28.  He was apparently seen by two surgeons, Dr. Tripuraneni and Dr. Cheema.  *See* [Doc. 194-3] at 12. Dr. Tripuraneni's note for that visit reads, in pertinent part, as follows:

> HISTORY: . . . He is complaining of pain and decreased ability to grip with his right hand.
>
> PHYSICAL EXAM: Examination of the right hand reveals shortened metacarpal on the right ring finger without any tenderness to palpation.  He is unable to have full flexion of his MCP joint of the right ring finger lacking about 20 degrees of flexion.   His grip strength has decreased compared to the

> contralateral side, unable to assess grip strength objectively today, as the grip strength meter was not working. . . .
>
> IMPRESSION: This is a 40-year-old right-hand dominant gentleman with right ring metacarpophalangeal degenerative joint disease . . .

*Id.* After consultation with Dr. Cheema, Dr. Tripuraneni prescribed surgery to replace the MCP joint. *Id.* Plaintiff claims that the surgery was scheduled for December 1, 2008, [Doc. 145] at 28, but that fact is not clear from either the UNM medical records, *see* [Doc. 194-3] at 13,[5] or the records from CCADC, *see, e.g.*, [Doc. 17-4] at 6 (Plaintiff's request to use the telephone on December 10, 2008, to schedule an appointment at UNM). It does appear that surgery was scheduled for December 29, 2008.[6] *See* [Doc. 194-3] at 16. However, that appointment was missed because the jail was unable to transport him on that date. *Id.* Although it appears that the jail intended to reschedule his appointment, *see id.* ("Your appointment will be rescheduled today 12-30-08."), it does not appear that the surgery was ever scheduled. He claims that there was a delay in treating the infection that caused him to suffer pain, bone deterioration, and permanent injury. *Id.*

Plaintiff filed his original complaint on August 4, 2009. [Doc. 1]. He has attempted to amend it six different times. *See* [Doc. 162] at 2–7 (recounting the procedural history). Finally, on July 16, 2012, an operative complaint was identified when the Sixth Motion to Amend was granted in part and denied in part. [Doc. 145] at 6–47 (operative complaint as amended by [Doc. 162] (magistrate judge's recommendations on same)). Plaintiff asserts two claims against Defendant Donaldson: "Deliberate Indifference to [the Need for] Medical Care" (claim A) and

---

[5] The record indicates an appointment for December 1, 2008, at 2:00 p.m. However, it does not say it is an appointment for surgery. No pre-surgical instructions are given, and 2:00 p.m. seems an odd time for a surgical appointment.

[6] Plaintiff was returned to CCADC on December 4, 2008. *[Doc. 145] at 28.*

"Deliberate Indifference to [the Need for] Psychiatric Care" (claim B).   [Doc. 145] at 6–47

(operative complaint as amended by [Doc. 162] (magistrate judge's recommendations on same)).

Plaintiff asserts that Defendant Donaldson was deliberately indifferent to his serious medical

needs in the following ways:

1. Refusing to see Plaintiff after being advised that the wound had reopened;

2. Refusing to send Plaintiff back to the emergency room after being advised that the would had reopened and had obvious signs of infection;

3. Refusing to supervise the distribution of Plaintiff's antibiotics;

4. Refusing to ensure that Plaintiff's "bone cult" was completed;

5. Refusing to ensure that his subordinate nurse, Defendant Curtis, arranged for physical therapy;

6. Refusing to follow Dr. Cheema's treatment plan and return Plaintiff to UNM for final evaluation;

7. Altering Plaintiff's medical records;

8. Failing to supervise Defendant Curtis in the "continuous course of sealing Plaintiff's wound[;]"

9. Refusing to timely treat Plaintiff's infected wound;

10. Refusing to house Plaintiff in the jail medical pod after learning of the subsequent infection and, instead, leaving Plaintiff in "inhumane conditions[;]"

11. Refusing to prescribe pain medications "consistant [sic] with infection disease pains[;]" and

12. Failing to follow Dr. Cheema's prescribed treatment plan.

[Doc. 145] at 32–35.  Plaintiff alleges that these failures resulted in pain and an inability "to

enjoy the benefits of controlling his anxiety through lifting weights, playing handball and softball

as his grasping ability is weak in the injured area."  *Id.* at 29.

B.  Findings and Ultimate Recommendation

Judge Vidmar found that Defendant had timely raised the defense of qualified immunity, but otherwise declined to make recommendations on the issue since the MSJ could be decided without them.  [Doc. 238] at 3–4.  He found that Defendant had met his burden to establish an absence of evidence to support Plaintiff's case, which shifted the burden to Plaintiff to show— through evidence—the existence of any element essential to his case.  [Doc. 238] at 15.  Judge Vidmar found that Plaintiff had not met his burden.  *Id.* at 15–19.  He found that Plaintiff had failed to establish a genuine issue of material fact as to the objective, causation, and subjective prongs of either of his claims.  *Id.*

Specifically, Judge Vidmar found that Plaintiff's alleged harms—decreased grip strength and pain—were not sufficiently serious to meet the objective prong.  *Id.* at 15–16.  He further found that Plaintiff had offered no evidence on which a reasonable jury could rely to establish that Defendant's actions or inactions caused Plaintiff's decreased grip strength or pain.  *Id.* at 15–17.  He also found that Plaintiff had failed to establish that Defendant acted with the requisite state of mind to meet the subjective prong.  *Id.* at 15.

With respect to Plaintiff's psychiatric care claim, Judge Vidmar found that Plaintiff's alleged harm—that Plaintiff himself struck another prisoner—was not sufficiently serious to meet the objective prong.  *Id.* at 18.  He also found that Plaintiff failed to produce any evidence whatsoever to establish that Defendant caused Plaintiff to attack his fellow inmate.  *Id.* at 18–19.  Finally, he found that Plaintiff failed to show evidence that would meet the subjective prong.  *Id.* at 18.

C.  Objections to the PF&RD

i.  Standard of Review for Objections

A district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which is objection is made." 28 U.S.C. § 636(b)(1).  "[O]bjections to the magistrate judge's report must be both timely and specific to preserve an issue for de novo review by the district court[.]"  *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

ii. Plaintiff's General Objections

First, Plaintiff challenges Judge Vidmar's synopses of the background facts as incomplete or inaccurate.  [Doc. 241] at 1, 6.  Other than recounting his own versions of the relevant background, Plaintiff does not identify *what* information he believes is missing or incorrect from the PF&RD or—importantly—why it matters.  *See id.* at 1–2, 6–11.  The objection is overruled.

Next, Plaintiff objects because he says that Judge Vidmar "based his recommendations by [sic] focusing on [the] Sixth Amended Complaint, [Doc. 145], rather an on [Plaintiff's Response to the MSJ], [Doc. 194].  In doing so, the Magistrate Judge mistakenly drew an inference not based on the evidence presented."  [Doc. 241] at 3 (bracketed document numbers in original).  Plaintiff fails to go further, and he fails to explain what mistaken inference he believes Judge Vidmar made.  The Court sees no error in Judge Vidmar's analyses of Plaintiff's claims as outlined in the Sixth Amended Complaint.  *See* [Doc. 238] at 13–14, 17.  The objection is overruled.

Third, Plaintiff objects to Judge Vidmar's explanation of the law on Eighth Amendment claims.  [Doc. 241] at 3–4.  Plaintiff argues that he is required to show that Defendant "had

actual knowledge of an objectively cruel condition[, which Plaintiff asserts was] a serious medical need, including a serious need for adequate psychiatric care[,] and that [Defendant] did not respond reasonably to the risk." *Id.* at 4.  Plaintiff explains that he does not have to show that Defendant "knew exactly what was wrong with [Plaintiff] or what its consequences could be if it was <u>clear</u> that [Plaintiff] had a serious problem and [Defendant] disregarded it." *Id.* at 4.  The Court sees no material difference in Plaintiff's recitation of the law and that presented by Judge Vidmar in the PF&RD.  *Compare id.* at 4, *with* [Doc. 238] at 6–8.  Additionally, Judge Vidmar did not suggest that Plaintiff was required to show that Defendant "knew exactly what was wrong with Plaintiff."  Rather, with respect to the subjective prong, Judge Vidmar found that Plaintiff failed to offer any evidence that Defendant acted with the requisite state of mind.  [Doc. 238] at 15–16.  To the extent that Plaintiff challenges the legal standard applied by Judge Vidmar, the objection is overruled.

### iii.  Plaintiff's Objections to Findings on the Medical Care Claim

Plaintiff argues that the Court has already found that "both the initial hand injury and subsequent infection constituted serious medical needs satisfying the objective prong of *Estelle v. Gamble*, 427 U.S. 97 (1976)."  [Doc. 241] at 11–12 (quoting [Doc. 144] at 3).  Plaintiff misrepresents the Court's earlier order.  He omits an essential portion of the quote, which in its entirety makes clear that the Court had, in fact, *not found* that his claims met the objective prong. In that order dismissing Defendant Lois Bean, the Court explained that it "*assumed for purposes of analysis* that both the initial hand injury and subsequent infection constituted serious medical needs satisfying the objective prong of the *Estelle v. Gamble* standard."  [Doc. 144] at 3

(footnote omitted) (emphasis added).  Whether Plaintiff's claims satisfy the objective prong has not heretofore been decided.  The objection is overruled.

Next, Plaintiff compares his situation to that in *Oxendine v. Kaplan*, 241 F.3d 1272 (10th Cir. 2001).  In *Oxendine*, the Tenth Circuit Court of Appeals reversed the district court's dismissal under Fed. R. Civ. P. 12(b)(6).  The court held that the plaintiff stated an Eighth Amendment claim where he alleged that the tip of his finger was severed when it was caught in a closing cell door, that the tip began to turn black from necrosis after the prison doctor attempted to reattach it, that the doctor waited seven days after seeing the blackened tissue before seeking outside medical assistance, and that Plaintiff suffered severe pain during this time and ultimately lost the tip of his finger.  *Id.* at 1278.  Plaintiff's reliance on *Oxendine* is misplaced.  There, the defendant doctor himself observed the necrosis—he noted it in the plaintiff's chart—but still waited seven days to seek outside medical help.  Whereas here, Defendant relied on another physician's report dated about ten weeks earlier, which described Plaintiff's fracture as "well-healed."[7]  [Doc. 182] at 13 (Defendant relied on the medical report) [Doc. 194-3] at 8–9 (medical report).  Defendant also relied on Plaintiff's medical file, which apparently reflected Plaintiff's courses of antibiotics.  *See* [Doc. 182] at 13.

Importantly, Plaintiff's objections still fail to establish "that the deprivation at issue was in fact sufficiently serious," *Mata*, 427 F.3d at 751 (internal quotation marks omitted), or that any alleged delay [in treatment] resulted in substantial harm, *Oxendine*, 241 F.3d at 1276.  On de

---

[7] Plaintiff argues that Defendant's April 2, 2008 assessment of a "well-healed hand" is inconsistent with the earlier report, which noted a "well healed proximal phalanx base fracture of the ring finger . . ." [Doc. 241] at 9, n.7 (Plaintiff's objection); [Doc. 194-3] at 8 (medical report).  The report also notes that the infection was healed. [Doc. 194-3] at 8 ("The patient states that he had an infection, . . . . [he received treatment], which appeared to have taken care of the infection.").  The Court finds that the January 21, 2008 medical report and Defendant's April 2, 2008 note are consistent.  Plaintiff's objection is overruled.

novo review, the Court agrees with Judge Vidmar that the alleged harms—decrease in grip strength and pain—do not rise to the level of violating the Constitution and, thus, do not meet the objective prong of *Estelle*.

Plaintiff urgently recounts numerous failures that he believes Defendant made. Plaintiff alleges that Defendant failed to dispense his antibiotics "in a continuous phase to provide maximum effect." [Doc. 241] at 11. He claims that Defendant should have returned him to the PRMC when he first reported that his finger was worsening and that Defendant's failure to do so constituted constitutionally impermissible interference with his treatment in violation of *Estelle*. *Id.* at 6, 9, 11, 12, 13, 14–15. He claims that Defendant further interfered with his treatment when he failed to follow Dr. Timmons' recommendation to have a bone culture performed. *Id.* at 8. He claims that Defendant was not the one who referred him to the specialists he eventually saw. *Id.* at 5. Plaintiff further asserts the "treating orthopedics [sic] opinion" was that his would was treated in a delayed manner. [Doc. 241] at 6, n.1 (citing [Doc. 194-3] at 8 (Dr. Aboka's note of 01/21/08)). Finally, Plaintiff alleges that Dr. George "recommended that [he] be seen by a hand specialist as reconstructive procedures would be necessary." [Doc. 241] at 8 (citing [Doc. 194-3] at 4). On de novo review, the Court finds that Plaintiff has failed to present admissible evidence demonstrating that the objective prong of *Estelle* is met. In other words, Plaintiff's objections fail to overcome the fact that he has not established that his alleged harms—decrease in grip strength and pain—do not rise to the level of violating the Constitution. *See Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006) ("[A] prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." (internal quotation marks omitted); *Perkins v. Kan. Dep't of*

*Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation.").

Plaintiff misperceives the standard here. He argues that his "lawsuit is based on what [Defendant] did not do, not on what [Plaintiff] eventually received." [Doc. 241] at 5. "[T]he inadequate and delayed medical care [Plaintiff] was forced to endure is dismissed in favor of the care [he] was given." *Id.* at 11. He also argues that none of the undisputed material facts found by Judge Vidmar "establish[es] that [Defendant] acted reasonable [sic.]" *Id.* at 4. None of these is the standard for a successful Eighth Amendment claim. Plaintiff is correct when he states that just because he received some treatment, his claim is not necessarily foreclosed. [Doc. 241] at 4, 5 (citing *Estelle*, 429 U.S. at 105). However, Plaintiff must show that deprivation at issue was in fact sufficiently serious, or in the case of alleged delay in treatment, that the delay resulted in substantial harm. This suit is not about what Defendant did not do, as Plaintiff argues. Rather, it is about whether Plaintiff was harmed. The Court finds that Plaintiff has failed to establish that his alleged harms are substantial enough to rise to the level of a constitutional violation.

For the first time, in his Objections, Plaintiff asserts that he "lost tissue [at] the fourth metacarpal joint and head." [Doc. 241] at 12. He claims that his finger is one-half inch shorter and does not fully extend. *Id.* He also seems to assert a claim based on an alleged "pattern of being treated through the jail[']s medical request forms." *Id.* at 17, 3. However, Plaintiff did not raise these issues in his Sixth Amended Complaint or in his response to the MSJ. *Id.* Therefore, they are waived. *See United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's [PF&RD] are deemed waived."). Even if they had not been waived, however, they would be of no use to

Plaintiff because they fail to establish the objective, causation, or subjective prongs of his medical care claim.

Plaintiff also objects to Judge Vidmar's finding that Plaintiff failed to present any evidence beyond his own conjecture that Defendant Donaldson's actions (or inactions) *caused* Plaintiff's alleged harm.  [Doc. 241] at 15.  For example, Plaintiff argues that his evidence proves that Defendant "did not follow the orders or prescribed treatments" of other doctors.  *Id.* However, even if Plaintiff's evidence did prove that Defendant failed to follow the treatment recommendations of the other doctors, that is not the same as establishing that Defendant's failures caused Plaintiff's alleged pain or alleged decrease in grip strength.   So, Plaintiff argument is unavailing.  Next, Plaintiff argues that his evidence shows that there was no damage to his metacarpal head and joint prior to the delayed treatment, and presumably therefore, the delay in treatment caused the joint damage.  *Id.*  As explained above, this argument is waived because Plaintiff failed to raise it prior to his objections to the PF&RD.  *See Garfinkle*, 261 F.3d at 1031.  Plaintiff also argues that he should not have to produce an expert.  [Doc. 241] at 15. Judge Vidmar did not find that he was required to produce an expert.  [Doc. 238] at 15.  Rather, he found that he was required to produce evidence of some sort—beyond his own conjecture— showing that Defendant's actions caused Plaintiff's alleged harms.  *Id.*  Plaintiff also argues that causation could be inferred from Dr. George's medical notes.   [Doc. 241] at 6 (citing [Doc. 194-3] at 4 (Dr. George's medical report)).  The Court finds nothing in Dr. George's report [Doc. 194-3] at 4, that could reasonably establish causation.  On de novo review, the Court finds that Plaintiff has failed to offer any evidence on which a reasonable jury could rely in finding

that Defendant's actions or failure to act caused Plaintiff's alleged harms.   The objections regarding causation are overruled.

iv.  Plaintiff's Objections to Findings on the Psychiatric Care Claim

Plaintiff makes several objections to Judge Vidmar's findings regarding Plaintiff's psychiatric care claim.  Plaintiff describes the errors that he believes Defendant made.  He does not dispute that Defendant renewed his prescriptions for his psychiatric medications.  Rather, he argues that Defendant "had not [sic] qualifications in psychiatry," failed to provide mental health services according to a contract with PRMC, and failed to respond "adequately" to Plaintiff's psychiatric needs.  [Doc. 241] at 17, 5.  Plaintiff also argues that just because he received some psychiatric treatment does not mean that his Eighth Amendment claim fails.  As with Plaintiff's medical care claim, he fails to establish that his alleged harm—his striking another inmate— meets the objective prong.  The Court overrules these objections.

Plaintiff also objects to Judge Vidmar's finding that Plaintiff has failed to establish causation.  [Doc. 241] at 16.  Plaintiff explains that he twice asked for an attorney to assist him with deposing an expert, but his requests for appointment of counsel were denied.  *Id.* (citing [Docs. 38, 151]).  He argues that it would not be "appropriate" to grant summary judgment after denying Plaintiff's requests for counsel.  He also argues that the Court could appoint an expert "to formulate questions for the purpose of obtaining an opinion from Dr. Fink," whom Plaintiff alleges may be available as his expert.  The Court disagrees with these arguments.

First, Judge Vidmar did not find that Plaintiff was required to produce expert testimony. *See* [Doc. 238] at 19.  Rather, he found that Plaintiff was required to produce some evidence that tends to show that Defendant's actions caused Plaintiff's alleged harm.  Plaintiff has failed to do

so, and the denials of his requests for appointment of counsel are irrelevant.  Moreover, the Court

has no authority to find and hire an expert to assist Plaintiff in making his case.  *See Patel v.*

*United States*, No. 09-6299, 399 F. App'x 355, 359 (10th Cir. Oct. 19, 2010) (unpublished)

(citing *Boring v. Kozakiewicz*, 833 F.2d 468, 474 (3rd Cir. 1987)).  To the extent Plaintiff is

seeking appointment of an expert under Fed. R. Evid. 706, a court's authority to make such an

appointment is discretionary.  *Cestnik v. Fed. Bureau of Prisons*, No. 03-1124, 84 Fed. Appx. 51,

53 (10th Cir. Dec. 18, 2003) (unpublished).  "The appointment of an expert pursuant to Rule 706

is not intended to further partisan interests of any party, but to aid the Court, through the services

of an impartial expert in its assessment of technical issues."  *Byng v. Campbell*, No. 9:07-CV-

471 (GLS)(DRH), 2008 U.S. Dist. LEXIS 83656, 2008 WL 4662349, *7 (N.D.N.Y. Oct. 20,

2008) (unpublished). The Court finds that appointment of an expert would not be a significant

aid to the Court.  Plaintiff's objections related to causation are overruled.

## V.  Conclusion

Defendant has met his burden to establish an absence of evidence to support Plaintiff's

case, which shifts the burden to Plaintiff to show—through evidence—the existence of any

element essential to his case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

Plaintiff has not met his burden.  Plaintiff has failed to establish a genuine issue of material fact

as to the objective, causation, and subjective prongs of either of his claims.  *Id.*

Plaintiff's alleged harms—decreased grip strength and pain (medical care claim) and

Plaintiff's himself hitting another inmate (psychiatric care claim)—are not sufficiently serious to

meet the objective prong of *Estelle*.  Plaintiff has offered no evidence on which a reasonable jury

could rely to establish that Defendant's actions or inactions caused these alleged harms.

Additionally, Plaintiff has failed to establish that Defendant acted with the requisite state of mind to meet the subjective prong of *Estelle*.

      **IT IS ORDERED, ADJUDGED, AND DECREED** that Plaintiff Duran's Response and Objections . . . [Doc. 241] are **OVERRULED**.

      **IT IS FURTHER ORDERED** that the Magistrate Judge's Proposed Findings and Recommended Disposition [Doc. 238] are **ADOPTED**.

      **IT IS FURTHER ORDERED** that Defendant Dr. Donaldson's Motion for Summary Judgment [Doc. 181] is **GRANTED**, and Defendant Donaldson and all claims against him are **DISMISSED with prejudice**.

      **IT IS FURTHER ORDERED** that the motions related to the MSJ [Docs. 201, 206, 208, 216] are **DENIED as moot**.

      **IT IS SO ORDERED.**

      **Dated this 30th day of August, 2013.**

 

                                        **M. CHRISTINA ARMIJO**
                                        **Chief United States District Judge**