IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LEO L. DURAN,

    Plaintiff,

v.                                                                  No. 09-cv-0758 MCA/SMV

CURRY CNTY. ADULT DET. CTR. et al.,

    Defendants.

## MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Defendant Tamara R. Curtis' Motion for Judgment on the Pleading on the Basis of Qualified Immunity [Doc. 231], filed on June 11, 2013. After being granted two extensions of time, Plaintiff[1] responded on December 16, 2013. [Doc. 257]. Defendant Curtis replied on January 2, 2014. [Doc. 259]. The case was referred to the undersigned by the Honorable M. Christina Armijo, Chief United States District Judge, on September 26, 2012, for analysis and a recommended disposition. [Doc. 189]. Having reviewed the record, the briefing, and the relevant law, and being otherwise fully advised in the premises, I RECOMMEND that the Motion be GRANTED IN PART and DENIED IN PART. At this stage of the proceedings, I find that Defendant Curtis is not entitled to qualified immunity on the claim for deliberate indifference to serious medical need arising out of her alleged refusal to follow up on referrals for a bone culture and for physical therapy. However, I find that she is entitled to qualified immunity on all other claims against her, which should be DISMISSED with prejudice.

---

[1] At all times relevant to this suit, Plaintiff has been incarcerated and proceeding pro se and *in forma pauperis*. *See* Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 [Doc. 1] ("Complaint"); Order [Doc. 3]. The Court liberally construes Plaintiff's filings because he is appearing pro se. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

**Background**

Plaintiff Leo Duran is a pro se prisoner litigant. He filed his original complaint pursuant to 28 U.S.C. § 1983 on August 4, 2009, claiming various constitutional violations arising from allegedly inadequate medical treatment and other alleged deprivations while incarcerated at the Curry County Adult Detention Center ("CCADC"). [Doc. 1]. The Amended Complaint[2] raises two Eighth Amendment claims against Defendant Curtis: (1) denial of or delay in providing medical care for a hand injury, and (2) denial of or delay in providing mental health services.

Plaintiff describes a domino-line series of events and circumstances culminating in his suffering a painful infection and ultimately losing grip strength in his hand. He blames Defendant Curtis, a CCADC nurse, and others for these events. Plaintiff claims that he was not given adequate psychiatric treatment, which caused him to lose control and strike another inmate. As a result of that blow, Plaintiff injured his finger. Although Plaintiff's finger was promptly treated at a hospital emergency room ("ER"), it later became infected. Plaintiff claims that the infection lasted for months, for which he blames Defendant Curtis and others. Plaintiff argues that Defendant Curtis violated the Constitution when she refused to return him to the ER at the first sign of infection. Instead, Defendant Curtis provided treatment at CCADC, including referrals to the CCADC physician, Dr. Donaldson.[3] Plaintiff argues that Defendant Curtis unconstitutionally failed to fulfill her gatekeeper role when she refused to return him to the ER.

---

[2] Through various amendments, the operative pleading now consists of the Proposed Amended Complaint [Doc. 145] (as amended by [Doc. 162] magistrate judge's recommendations on same) (collectively "Amended Complaint").

[3] Plaintiff also brought claims against Dr. Donaldson, but he was granted summary judgment on August 30, 2013. [Doc. 242].

Defendant Curtis argues that she is entitled to qualified immunity and judgment on the pleadings. [Doc. 232] at 2. Specifically, she argues that Plaintiff's factual allegations—even if true—do not show that she was deliberately indifferent to Plaintiff's medical or psychiatric needs. *Id.* at 10–17. Plaintiff responded in opposition. He argues that Defendant Curtis misidentifies the standard of review. He clarifies his allegations against Defendant Curtis and argues that her actions, or inactions, violated his Eighth Amendment rights. *See* [Doc. 257].

## Legal Standard for Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "To survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts that show—when taken as true—[1] the defendant plausibly violated his constitutional rights, [2] which were clearly established at the time of violation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012).

## Legal Standard for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings once the pleadings are closed as long as the motion does not delay trial. The same standard governs a Rule 12(c) motion as that which governs a Rule 12(b)(6) motion. Therefore, when considering a motion for judgment on the pleadings, courts "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006). Courts will not grant judgment on the pleadings "unless the moving party has clearly established that no

material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted). The plausibility-pleading standard outlined in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), applies to Rule 12(c) motions. *Corder v. Lewis Plamer Sch. Dist. No. 38*, 566 F.3d 1219, 1223–24 (10th Cir. 2009). "Under [the *Twombly*] standard, a complaint must include enough facts to state a claim to relief that is plausible on its face. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* (internal quotation marks and citations omitted). Although a court must accept as true all of the allegations in a complaint, deference is "inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

Legal Standard for Eighth Amendment Claims

An Eighth Amendment claim of deliberate indifference to serious medical needs requires the plaintiff to demonstrate "both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). To satisfy the objective component, "[t]he prisoner must first produce evidence that the deprivation at issue was in fact sufficiently serious." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotation marks omitted). That is, Plaintiff's medical condition must have been diagnosed by a physician as mandating treatment, or be so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002); *see also*

*Weatherford v. Taylor*, No. 09-7018, 347 F. App'x 400, 403 (10th Cir. Oct. 5, 2009) (unpublished) (severe chest pain followed by a fatal heart attack meets the objective prong); *Mata*, 427 F.3d at 753 (severe chest pain, non-fatal heart attack, and damage to heart could meet objective component, assuming causation had been established). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006) (internal quotation marks omitted). "A complaint about an inadvertent failure to provide adequate medical care or that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* (internal quotation marks omitted).

The Tenth Circuit Court of Appeals has stated:

> To satisfy the objective component of a deliberate indifference claim arising under the Eighth Amendment, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). "[T]he purpose for this requirement is to limit claims to significant, as opposed to trivial, suffering." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005). Consequently, we look to the alleged injury claimed by the prisoner, and ask "whether that harm is sufficiently serious." *Id.*
>
> When the prisoner's Eighth Amendment claim is premised on an alleged delay in medical care, the prisoner must "show that the delay resulted in substantial harm." *Oxendine v. Kaplan*, 241 F.3d, 1272, 1276 (10th Cir. 2001) (internal quotation marks omitted). That "substantial harm" can be the ultimate physical injury caused by the prisoner's illness, so long as the prisoner can show that the more timely receipt of medical treatment would have minimized or prevented the harm. *See Mata*, 427 F.3d at 753. The "substantial harm" can also be an intermediate injury, such as the pain experienced while waiting for treatment and analgesics. *Id.* Although "not every twinge of pain suffered as a result of delay in medical care is actionable," when the pain experienced during the delay is substantial, the prisoner "sufficiently establishes the

>objective element of the deliberate indifference test." *Sealock*, 218 F.3d at 1210.

*Kikumura*, 461 F.3d at 1292.

Even where there is a sufficiently serious medical need, however, delayed "medical care rises to the level of an Eighth Amendment violation only if the plaintiff can show that the delay resulted in substantial harm." *Sealock*, 218 F.3d at 1210. That is, the Plaintiff must prove causation. *Daniels v. Gilbreath*, 668 F.2d 477, 488–89 (10th Cir. 1982). To establish the requisite causal link between the delay and the alleged harm, "expert testimony is not required in cases where the jury can determine from the non-expert evidence presented whether the delay caused additional harm." *King v. Patt*, No. 12-4107, 2013 US App LEXIS 9492, at *24 (10th Cir. May 10, 2013) (unpublished). However an expert is required where "the effects of delay may be so subtle or complex that a lay jury cannot adequately determine the issue of causation without expert assistance." *Id.*

The subjective component requires "evidence of the prison official's culpable state of mind," which may be fulfilled by showing that the official "[knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference." *Id.* (brackets and internal quotation marks omitted). "To prevail on the subjective component, the prisoner must show that the defendant[ ] knew [that the prisoner] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (internal quotation marks omitted). The pertinent question is whether the prisoner's symptoms were such that the defendant "knew the risk to the prisoner and chose (recklessly) to disregard it[.]" *Mata*, 427

F.3d at 753.  Additionally, "[a] prison medical professional who serves 'solely . . . as a gatekeeper for other medical personnel capable of treating the condition' may be held liable under the deliberate indifference standard if she 'delays or refuses to fulfill that gatekeeper role.'"  *Mata*, 427 F.3d at 751 (quoting *Sealock*, 218 F.3d at 1211).

Ultimately, "Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"  *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  Mere negligence is not enough.  *Id.*

### **Medical-Need Claims**[4]

Duran suffered a hand injury from an altercation with another inmate on December 10, 2007.  [Doc. 145] at 16.  He cut his finger on the other inmate's teeth.  *Id.* at 17.  Two CCADC nurses examined the cut, cleaned it thoroughly with Peroxide, and sent him to Plains Regional Medical Center ("PRMC") for further treatment.  *Id.*  At PRMC, he was examined by a Dr. Kamermans.  *Id.*  Dr. Kamermans examined the wound and ordered X-rays, a tetanus shot, and antibiotics.  *Id.*  Dermabond, a liquid adhesive, was used to close the wound.  *Id.*  Dr. Kamermans ordered that no creams or ointments should be applied to the wound and that Plaintiff should be returned to the ER if there were any acute changes to the wound.  *Id.* at 17−18.  These instructions were given to CCADC medical personnel when Plaintiff returned from the hospital.

Shortly thereafter, the pain worsened, the wound re-opened, and an infection developed.  *Id.* at 18.  Plaintiff informed Defendant Curtis about these changes on Wednesday, December 12, 2007.  *Id.*  Curtis told Plaintiff that Dr. Donaldson would be in on Thursday,

---

[4] These factual allegations from the Amended Complaint are taken as true.  *See Park Univ. Enters.*, 442 F.3d at 1244.

December 13, 2007, to do Plaintiff's follow-up, and she instructed him to keep gauze and "acewrap" over his hand in the meantime. *Id.* On Thursday, Dr. Donaldson viewed Plaintiff's wound through the cell foodport. *Id.* Plaintiff "informed [Dr. Donaldson] of what had happened and that the hospital doctor said for 'Plaintiff to see him.'" *Id.* However, Dr. Donaldson elected not to return Plaintiff to the ER, but instead told him, "It's just pus but your [sic] on antibiotics, and if I can't see you today I'll just see you next Thursday." *Id.*

The following day, December 14, Defendant Curtis "had Plaintiff brought into the medical exam room." [Doc. 145] at 19. She examined the wound, cleaned it, and attempted re-close it with Dermabond. *Id.* at 19–20. Plaintiff told her that the wound was getting infected. *Id.* at 20. Defendant Curtis "refused to return Plaintiff to the ER, stating 'you can see Dr. Donaldson on Thursday.'" *Id.* Over the next few days, Defendant Curtis continued to attempt to seal the wound. *Id.* Plaintiff complains that Defendant Curtis performed her examinations and provided this treatment "without a qualified medical provider's approval or supervision." *Id.* Defendant Curtis finally closed the wound successfully, which Plaintiff believes caused his infection to spread throughout his body. *Id.*

The next Thursday (Dr. Donaldson's normal day to see patients at CCADC) would have been December 20, 2007. On that day, however, Plaintiff was taken to court for arraignment. *Id.* at 20. Thus, he did not see Dr. Donaldson on December 20.

Plaintiff claims that on or around December 28, 2007, he was taken to a "substandard health clinic" where he was seen by a Dr. Lindo. *Id.* at 23. Plaintiff claims that Dr. Lindo prescribed antibiotics for him. *Id.* Plaintiff also claims that Dr. Lindo recommended an "emergency referral to an infectious disease specialist." *Id.* at 24.

Seven days later, on January 4, 2008, Plaintiff was taken to see a Dr. George. *Id*. at 24. According to Plaintiff, "Dr. George extracted two white anaerobis [sic] maggots from the wound." Dr. George took a bone culture, prescribed more antibiotics, and recommended that Plaintiff see an infectious disease specialist, as well as an orthopeadist for possible hand surgery. *Id.* On January 17, 2008, Plaintiff saw Dr. Timmons, an infectious disease specialist. *Id.* However, Plaintiff claims that Dr. Timmons "was unable to find the culture results performed by M.D. George" and, thus, recommended a second culture. *Id.* Dr. Timmons also prescribed antibiotics and recommended that Plaintiff see an orthopeadist for "possible surgery." *Id.* at 24−25. Plaintiff alleges that Defendant Curtis failed to follow up on Dr. Timmons's recommendation for a second bone culture, which caused his infection to persist for an additional four or five months. *Id.* at 25.

On January 21, 2008, Plaintiff saw Dr. Cheema, an orthopaedist at University of New Mexico Hospital. *Id.* at 25–26. Dr. Cheema noted that the infection was clearing up. *Id.* at 26. Dr. Cheema ordered X-rays and recommended physical therapy and a follow-up appointment in six weeks for final evaluation. *Id.* Plaintiff alleges that Defendant Curtis failed to follow up on Dr. Cheema's recommendation for physical therapy, which deprived him of a fully functional and pain-free hand. *Id.*

On April 2, 2008, Plaintiff saw Dr. Donaldson, who determined that Plaintiff's hand was well-healed. *Id.* Dr. Donaldson informed Plaintiff that Dr. Cheema agreed that Plaintiff's hand was healed and that surgery was not needed. *Id.* Plaintiff believed that Dr. Donaldson was wrong about Dr. Cheema's orders, so he requested copies of the records. *Id.* at 27. Plaintiff claims that Nurse Marie, another nurse at CCADC, told Plaintiff that Defendant Curtis attempted

to copy over Plaintiff's medical records. *Id.* Plaintiff claims that Nurse Marie "brought to Plaintiff a copy of the altered medical note and medical order which imprinted note's written by [Dr.] Donaldson." *Id.* (errors in original).

Plaintiff was transferred to the New Mexico Department of Corrections ("NMDOC") on May 8, 2008, *id.* at 27–28, where he remained until December 4, 2008, at which time, he was returned to CCADC, *id.* at 29. While at NMDOC, Plaintiff reports that X-rays were taken of his hand, which showed "deformity." *Id.* at 28. He also reports that he had a follow-up appointment on September 15, 2008, with Dr. Cheema, who recommended joint replacement. *Id.* The surgery was scheduled for December 1, 2008. *Id.* Apparently, the surgery was not performed. *See id.* Plaintiff reports that he made two attempts to reschedule the surgery, neither of which was successful, but he provides no further explanation as to why the surgery was not performed. *Id.* Ultimately, Plaintiff initiated this action on August 4, 2009. [Doc. 1].

<u>Medical-Need Claims that Should Survive</u>

Although Plaintiff makes numerous allegations against Defendant Curtis, only two are sufficient to state a claim under the Eighth Amendment:

1. Failing to get a bone culture as ordered by Dr. Timmons, which caused the infection to last four or five months longer. [Doc. 145] at 25, 35.

2. Refusing to follow Dr. Cheema's plan for physical therapy and follow-up, which deprived Plaintiff of having a fully functional hand. *Id.* at 26.

As an initial matter, I note that nowhere does Plaintiff expressly allege that Defendant Curtis was *aware* of Dr. Timmons's or Dr. Cheema's recommendations. *See* [Doc. 145] at 25, 26, 35. The matter is simply unclear. But because Plaintiff is proceeding pro se, I must construe his filings liberally. Therefore I will read Plaintiff's Amended Complaint as

stating that Defendant Curtis was aware of the recommendations and was deliberately indifferent to them.  I recommend denying qualified immunity and judgment on the pleadings as to these two bases for the medical-care claim.  If Plaintiff's allegations—including that Defendant Curtis was aware of the doctors' orders—are true, a reasonable jury could conclude that Defendant Curtis was deliberately indifferent to Plaintiff's serious medical needs.

Defendant Curtis does not directly address whether the bone-culture allegations state a claim against her.  Rather, she appears to imply that the infection could not have persisted for four or five months after January 17—when she allegedly failed to get the culture—because Dr. Cheema noted on January 21 that the infection "appeared to be clearing up." [Doc. 232] at 7.  Likewise, she makes no direct argument regarding the alleged failure to secure physical therapy.  *Id.*

Instead, she argues that Plaintiff's claims generally fail to meet either the objective or subjective prongs required for Eighth Amendment claims.  [Doc. 259] at 6.  She points to the Court's order granting summary judgment in favor of Dr. Donaldson as support for her argument that the allegations in the Amended Complaint—which are substantially similar to those asserted against Dr. Donaldson—do not show that the alleged deprivations were sufficiently serious to meet the objective prong.  [Doc. 259] at 6.  She also argues that because she took certain actions *prior to* Dr. Timmons's or Dr. Cheema's recommendations, she could not have been deliberately indifferent.  *Id.* at 9.

At this stage of the litigation—where Plaintiff's burden is significantly lighter than it was in defending the motion for summary judgment filed by Dr. Donaldson—I disagree with Defendant Curtis.  If Drs. Timmons and Cheema ordered treatment for Plaintiff, and if

11

Defendant Curtis was aware of those orders, and if she ignored the orders, and if her ignoring them caused the alleged injuries, then a reasonable jury could find that Defendant Curtis was deliberately indifferent. *See Palmer v. Board of Comm'rs for Payne Cnty.*, No. 11-6021, 441 F. App'x 582, 584–85 (10th Cir. Oct. 14, 2011) (unpublished) (affirming district court's denial of qualified immunity to jail administrator who ignored doctor's specific instructions to return inmate to the ER if his pain increased). I therefore recommend denying Defendant Curtis's motion for qualified immunity and for judgment on the pleadings with respect to Plaintiff's claims related to the bone culture and physical therapy.

Medical-Need Claims that Should Not Survive

Plaintiff asserts that Defendant Curtis was deliberately indifferent to his serious medical needs in numerous other ways, which I find do not state a claim for relief.[5] These claims include:

1. Refusing to return to Plaintiff to the ER when Plaintiff first told Defendant Curtis that the cut was getting infected and, instead, telling Plaintiff to wait until Thursday to see Dr. Donaldson. [Doc. 145] at 19–20, 34.

2. Attempting to reclose the wound without supervision or authorization from Plaintiff's "treating doctor." [Doc. 145] at 18–20, 34.

3. Refusing to house Plaintiff in the jail's medical pod once she learned of the infection. [Doc. 145] at 35.

4. Refusing to return to Plaintiff to the ER and instead making an appointment for and sending him to a "substandard" medical clinic. [Doc. 145] at 23, 34.

5. Altering his medical records. [Doc. 145] at 27, 34.

---

[5] Plaintiff asserts no claim against Defendant Curtis for failing to follow Dr. Cheema's recommendation for surgery. [Doc. 257] at 20.

Plaintiff alleges that these failures resulted in pain and an inability "to enjoy the benefits of controlling his anxiety through lifting weights, playing handball and softball as his grasping ability is weak in the injured area." *Id.* at 29.

Defendant Curtis argues that these allegations—even if true—do not amount to deliberate indifference. [Doc. 232] at 10–15. Plaintiff responds that Defendant Curtis is not entitled to qualified immunity because she failed her duty to as a "gatekeeper" to refer Plaintiff to medical personnel capable of treating his infection. [Doc. 257] at 2. Plaintiff rehashes his factual allegations and elaborates on them in his Response.[6] *Id.* at 3–29. As further support for his position, Plaintiff cites to three cases that, although not binding on this Court, are illustrative. *Id.* at 9–12.

For example, in *Dicino v. Renfro*, No. 12-cv-01274-WYD-KLM, 2013 WL 2317242 (D. Colo. May 28, 2013) (unpublished), the plaintiff inmate asked the jail nurse for medical attention for a painful, full-body rash, but he did not see a physician for the rash for two months. *Id.* at *1. Even then, after the doctor prescribed steroids, the inmate never received the medication. *Id.* The federal district court in Colorado held that the plaintiff inmate had stated a claim for deliberate indifference to serious medical need. *Id.* at *4.

In *Palmer*, 441 F. App'x at 584–85, the Tenth Circuit Court of Appeals affirmed the district court's denial of qualified immunity where a reasonable juror could have inferred from

---

[6] Of course, for purposes of the instant motion, the Court considers only the factual allegations contained in the Amended Complaint. *See* Fed. R. Civ. P. 12(c)–(d). Accordingly, to the extent that Plaintiff raises new or different factual allegations in his Response, [Doc. 257], such allegations are disregarded. Although courts may interpret new factual allegations asserted in a response to a dispositive motion as a potential request to amend the complaint, *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003), amendment is not warranted here. The complaint has already been amended six times. The action has been pending for more than four years. The Court has "strongly admonished" Plaintiff that further delays would not be permitted absent extraordinary circumstances. Most importantly, Plaintiff offers no reason why these allegations could not have been included in the Amended Complaint. Accordingly, no amendment should be permitted, and Defendant Curtis's motion should be evaluated in light of the factual allegations contained the Amended Complaint only.

the evidence that the defendant jail administrator ignored an ER doctor's particularized follow-up instructions for the inmate. The inmate had been sent to the ER with symptoms of methicillin-resistant Staphylococcus aureus ("MRSA"). *Id.* at 583. Although lab tests confirming MRSA had not come back, the ER doctor gave instructions that the inmate be returned to the ER in two days, or sooner if his pain worsened. *Id.* Within hours after returning to the jail, the inmate's pain worsened until he was crying, vomiting, and pleading to return to the hospital. *Id.* The jail administrator refused to return him to the ER and, indeed, refused any treatment or referral to any medical staff. *Id.* The jail administrator did nothing more than tell the inmate to "shut the fuck up or go back to the main jail where you got the disease." *Id.* at 584. The inmate was returned to the ER the following evening, where he underwent surgery. *Id.* The Tenth Circuit held that the defendant jail administrator was not entitled to qualified immunity because his ignoring the doctor's particularized follow-up instructions and his denying any treatment or referral could constitute deliberate indifference. *Id.* at 584–85.

In contrast, in *Malles v. Lehigh Cnty.*, 639 F. Supp. 2d 566 (E.D.Pa 2009), the district court in the Eastern District of Pennsylvania granted summary judgment in favor of the defendant prison officials. The court held that a five-day delay in diagnosis of and treatment for MRSA did not demonstrate deliberate indifference because the jail nurses examined and gave advice to the inmate about his symptoms on each of the five days.[7] *Id.* at 578. "[A]t worst, such behavior amount[ed] to negligence, not deliberate indifference." *Id.*

---

[7] It appears that Plaintiff additionally argues that (1) he had symptoms of a "severe systemic infection (sepsis)," and (2) under *Malles*, a delay of five days in treating such an infection is not "appropriate." *See* [Doc. 257] at 12 (quoting *Malles*, 639 F. Supp. 2d at 576). Plaintiff explains that he points to the expert testimony described in *Malles* to support his own position that Defendant Curtis unconstitutionally failed her duty as a gatekeeper to medical treatment. *Id.* at 12 n.6. I am not persuaded by Plaintiff's argument. The Amended Complaint does not allege that Defendant Curtis was aware of Plaintiff's having symptoms of a "severe systemic

14

In contrast to *Dicino* and *Palmer*—where the inmates received no treatment for their medical conditions and were ignored—here, Plaintiff received timely, consistent, and ongoing treatment for his hand. Plaintiff's argument is that he should have received *different* treatment. For example, Plaintiff argues that he should have been returned to the ER when the first signs of infection appeared instead of continuing on the antibiotics he was receiving (albeit inconsistently) and receiving treatment by Defendant Curtis and Dr. Donaldson in the facility. Nevertheless, he acknowledges that he did receive treatment. Plaintiff argues that the treatment he received is irrelevant because Curtis failed to return Plaintiff to the emergency department, which shows that Curtis knew of the risks and ignored them. [Doc. 257] at 20–21. I disagree.

I find that the instant case is more like *Malles*, where the jail nurses attended to the inmate daily and, at most, negligently failed to diagnose his condition. Here, Plaintiff initially reported swelling and pus to Defendant Curtis around December 12, 2007, and knowing that he was on antibiotics, she told Plaintiff that he could see Dr. Donaldson on Thursday, December 13. Indeed, on Thursday, Dr. Donaldson appeared at Plaintiff's cell foodport and looked at the wound. Later that same day, Defendant Curtis, without any further request from Plaintiff, brought Plaintiff a medical request form so that he could ask to be seen again by Dr. Donaldson the following week. Several times over the next week, Defendant Curtis "had Plaintiff brought" into the medical area. On each occasion, she examined, cleaned, and attempted to reseal his wound with Dermabond. Between December 28, 2007, and January 21, 2008, Plaintiff saw four different outside physicians, the last of whom indicated that Plaintiff's infection "appeared to be clearing up." Like the plaintiff in *Malles*, Plaintiff received treatment for his ailment. Plaintiff's

---

infection" before she referred Plaintiff to Dr. Donaldson or took other action. Rather, it alleges that she was aware that "the wound swelled and began to open and seep pus." [Doc. 145] at 18.

15

complaint is that it should have been *different* treatment.  He believes that Defendant Curtis should have returned him to the ER when the first signs of infection appeared.  He argues that Curtis was Constitutionally obligated to return him to the ER because the ER doctor had ordered that he be returned if his would showed any "acute changes."  Plaintiff is incorrect.  The course of action by Defendant Curtis, as described in the Amended Complaint, does not show that she knew of and disregarded an excessive risk to Plaintiff's health.  To the extent that Defendant Curtis was aware that Plaintiff needed medical attention for his hand, she took reasonable steps to abate any risk to his health.  Even if everything that Plaintiff alleges were true, such allegations do not amount to a Constitutional violation by Defendant Curtis.  *See Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999) (holding that an inmate's preference or belief that another course of treatment was warranted is not evidence of a constitutional violation.).  Because Plaintiff's allegations do not show that Defendant Curtis violated his Eighth Amendment right, she is entitled to qualified immunity and judgment on the pleadings with respect to these claims.

### Psychiatric-Need Claims

Plaintiff alleges that Defendant Curtis violated the Eighth Amendment by refusing to seek timely psychiatric care for him between October 2007 and March 2008.  [Doc. 145] at 12−13.  Plaintiff complains that as a result of Defendant Curtis's alleged deliberate indifference to his serious psychiatric need, he "suffered an extreme lack of control" on December 10, 2007, when he struck another inmate, thereby injuring his own hand.  *Id.*

Specifically, the Complaint alleges that Defendant Curtis was aware of Plaintiff's mental illness and that Plaintiff asked Curtis to obtain Plaintiff's psychotropic medications from a

family member. *Id.* at 11. Plaintiff also informed Curtis of a mental health appointment he had with an outside treatment provider and told her that he needed to see Dr. Donaldson about his anxiety attacks and leg cramps. *Id.* Then, without an examination, Dr. Donaldson ordered Plaintiff's psychotropic medications, Risperdal and Seroquel. *Id.* Defendant Curtis rescheduled Plaintiff's outside mental health treatment appointment for an unknown reason, and Plaintiff missed the rescheduled appointment due to transportation issues, which caused the outside provider to discontinue Plaintiff's services. *Id.* at 12. Defendant Curtis was aware on December 7, 2007, of Plaintiff's "progressed anxiety" because Plaintiff had submitted a medical request for increased anti-anxiety medication. *Id.* at 14. On December 10, 2007, Plaintiff's "mental disorder reached emergency proportion's [sic] resulting in [his] striking another inmate causing severe injures[.]" *Id.* at 16. Plaintiff also filed a grievance on February 3, 2008, against Defendant Curtis because she had "interfered" with Plaintiff's counselor's recommendation to set an appointment with a psychiatrist in Roswell. *Id.* at 29. However, Plaintiff saw a psychiatrist in March of 2008. *Id.* at 12.

Plaintiff asserts that Defendant Curtis was deliberately indifferent to his serious psychiatric needs by failing to fulfill her gatekeeper role to get Plaintiff adequate psychiatric treatment before the assault took place.[8] *Id.* at 37. These allegations do not plausibly state a claim for relief. Specifically, Plaintiff's allegations—even if true—do not show that Defendant Curtis was aware of a substantial risk to Plaintiff's health. Plaintiff was receiving psychotropic medications, including at least one for anxiety, before he struck the other inmate. [Doc. 145]

---

[8] Plaintiff does not allege a claim against Defendant Curtis for interfering with his counselor's recommendation to have an appointment with a psychiatrist in Roswell. [Doc. 257] at 26 (explaining that no such claim is asserted); *see* [Doc. 145] at 29 (mentioning the factual allegation in the Amended Complaint).

at 11, 14. Prior to the assault, Defendant Curtis was aware that Plaintiff's anxiety was worsening but she was not aware of anything more serious. *Id.* at 14. In fact, Plaintiff's mental illness had never before caused him to hit anyone, and the assault was a "deviation from his normal attitude and character." *Id.* at 16. Plaintiff does not allege any facts that could show that Defendant Curtis was aware of a *substantial* risk to Plaintiff's health or that she disregarded any such risk. *See* [Doc. 145]. That is, Plaintiff's allegations, even if true, do not show that Defendant Curtis violated his Constitutional rights. Accordingly, Defendant Curtis is entitled to qualified immunity and judgment on the pleadings for Plaintiff's claim for deliberate indifference to psychiatric needs.

## Conclusion

At this stage of the proceedings, I find that Defendant Curtis is not entitled to qualified immunity on the claim for deliberate indifference to serious medical need arising out her alleged refusal to follow up on referrals for a bone culture and for physical therapy. However, I do find that she is entitled to qualified immunity and judgment on the pleadings as to all other claims, which should be **DISMISSED with prejudice**.

**IT IS THEREFORE RESPECTFULLY RECOMMENDED** that Defendant Tamara R. Curtis' Motion for Judgment on the Pleading on the Basis of Qualified Immunity [Doc. 231] be **GRANTED IN PART and DENIED IN PART**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**