# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LEO L. DURAN,

      **Plaintiff,**

v.                                                **No. 09-cv-0758 MCA/SMV**

CURRY CNTY. ADULT DET. CTR. et al.,

      **Defendants.**

## ORDER ADOPTING IN PART MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on the Magistrate Judge's Proposed Findings and Recommended Disposition [Doc. 263] ("PF&RD"), issued on January 22, 2014.  On referral by the Court, [Doc. 189], the Honorable Stephan M. Vidmar, United States Magistrate Judge, recommended that Defendant Tamara R. Curtis's Motion for Judgment on the Pleading on the Basis of Qualified Immunity [Doc. 231] be granted in part and denied in part.  [Doc. 263].  He found that, at this stage of the proceedings, Defendant Curtis was not entitled to qualified immunity on the claim for deliberate indifference to serious medical need arising out of her alleged refusal to follow up on referrals for a bone culture and for physical therapy.  *Id.*  However, he did find that she was entitled to qualified immunity on all other claims against her, and recommended that they be dismissed with prejudice.  *Id.*  Defendant Curtis objected to the PF&RD on February 10, 2014.  [Doc. 264].  Plaintiff submitted his own objections, which he signed on March 10, 2014, and which were docketed by the Clerk on March 20, 2014. [Doc. 269].  On de novo review of the portions of the PF&RD to which the parties objected, the Court will SUSTAIN Defendant Curtis's Objections [Doc. 264], OVERRULE Plaintiff's

Objections [Doc. 269], ADOPT in part the PF&RD [Doc. 263], GRANT Defendant Tamara R. Curtis's Motion for Judgment on the Pleading on the Basis of Qualified Immunity [Doc. 231], and DISMISS with prejudice all claims against her.

## Background

Plaintiff Leo Duran is a pro se prisoner litigant.   He filed his original complaint pursuant to 28 U.S.C. § 1983 on August 4, 2009, claiming various constitutional violations arising from allegedly inadequate medical treatment and other alleged deprivations while incarcerated at the Curry County Adult Detention Center ("CCADC").   [Doc. 1].   The Amended Complaint[1] raises two Eighth Amendment claims against Defendant Curtis: (1) denial of or delay in providing medical care for a hand injury, and (2) denial of or delay in providing mental health services.

Plaintiff describes a domino-line series of events and circumstances culminating in his suffering a painful infection and ultimately losing grip strength in his hand.   He blames Defendant Curtis, a CCADC nurse, and others for these events.   Plaintiff claims that he was not given adequate psychiatric treatment, which caused him to lose control and strike another inmate.   As a result of that blow, Plaintiff injured his finger.   Although Plaintiff's finger was promptly treated at a hospital emergency room ("ER"), it later became infected.   Plaintiff claims that the infection lasted for months, for which he blames Defendant Curtis and others. Plaintiff argues that Defendant Curtis violated the Constitution when she refused to return him to the ER at the first sign of infection.   Instead, Defendant Curtis provided treatment at

---

[1] Through various amendments, the operative pleading now consists of the Proposed Amended Complaint [Doc. 145] (as amended by [Doc. 162] magistrate judge's recommendations on same) (collectively "Amended Complaint").

CCADC, including referrals to the CCADC physician, Dr. Donaldson.[2]  Plaintiff argues that Defendant Curtis unconstitutionally failed to fulfill her gatekeeper role when she refused to return him to the ER.

Defendant Curtis argues that she is entitled to qualified immunity and judgment on the pleadings.  [Doc. 232] at 2.  Specifically, she argues that Plaintiff's factual allegations—even if true—do not show that she was deliberately indifferent to Plaintiff's medical or psychiatric needs.  *Id.* at 10–17.

## Legal Standard for Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).  "To survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts that show—when taken as true—[1] the defendant plausibly violated his constitutional rights, [2] which were clearly established at the time of violation."  *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012).

## Legal Standard for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings once the pleadings are closed as long as the motion does not delay trial.  The same standard governs a Rule 12(c) motion as that which governs a Rule 12(b)(6) motion.  Therefore, when considering a motion for judgment on the pleadings, courts "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the

---

[2] Plaintiff also brought claims against Dr. Donaldson, but he was granted summary judgment on August 30, 2013.  [Doc. 242].

same." *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006).  Courts will not grant judgment on the pleadings "unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted).  The plausibility-pleading standard outlined in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), applies to Rule 12(c) motions.  *Corder v. Lewis Plamer Sch. Dist. No. 38*, 566 F.3d 1219, 1223–24 (10th Cir. 2009).  "Under [the *Twombly*] standard, a complaint must include enough facts to state a claim to relief that is plausible on its face.  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  *Id.* (internal quotation marks and citations omitted).  Although a court must accept as true all of the allegations in a complaint, deference is "inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

<u>Legal Standard for Eighth Amendment Claims</u>

An Eighth Amendment claim of deliberate indifference to serious medical needs requires the plaintiff to demonstrate "both an objective and a subjective component."  *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  To satisfy the objective component, "[t]he prisoner must first produce evidence that the deprivation at issue was in fact sufficiently serious."  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotation marks omitted).  That is, Plaintiff's medical condition must have been diagnosed by a physician as mandating

treatment, or be so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002); *see also Weatherford v. Taylor*, No. 09-7018, 347 F. App'x 400, 403 (10th Cir. Oct. 5, 2009) (unpublished) (severe chest pain followed by a fatal heart attack meets the objective prong); *Mata*, 427 F.3d at 753 (severe chest pain, non-fatal heart attack, and damage to heart could meet objective component, assuming causation had been established). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006) (internal quotation marks omitted). "A complaint about an inadvertent failure to provide adequate medical care or that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* (internal quotation marks omitted).

The Tenth Circuit Court of Appeals has stated:

> To satisfy the objective component of a deliberate indifference claim arising under the Eighth Amendment, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). "[T]he purpose for this requirement is to limit claims to significant, as opposed to trivial, suffering." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005). Consequently, we look to the alleged injury claimed by the prisoner, and ask "whether that harm is sufficiently serious." *Id.*
>
> When the prisoner's Eighth Amendment claim is premised on an alleged delay in medical care, the prisoner must "show that the delay resulted in substantial harm." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (internal quotation marks omitted). That "substantial harm" can be the ultimate physical injury caused by the prisoner's illness, so long as the prisoner can show that the more timely receipt of medical treatment would have minimized or prevented the harm. *See Mata*, 427 F.3d at 753. The "substantial harm" can also be an intermediate injury, such as the pain experienced while waiting for treatment and analgesics. *Id.*

> Although "not every twinge of pain suffered as a result of delay in medical care is actionable," when the pain experienced during the delay is substantial, the prisoner "sufficiently establishes the objective element of the deliberate indifference test." *Sealock*, 218 F.3d at 1210.

*Kikumura*, 461 F.3d at 1292.

Even where there is a sufficiently serious medical need, however, delayed "medical care rises to the level of an Eighth Amendment violation only if the plaintiff can show that the delay resulted in substantial harm." *Sealock*, 218 F.3d at 1210. That is, the Plaintiff must prove causation. *Daniels v. Gilbreath*, 668 F.2d 477, 488–89 (10th Cir. 1982). To establish the requisite causal link between the delay and the alleged harm, "expert testimony is not required in cases where the jury can determine from the non-expert evidence presented whether the delay caused additional harm." *King v. Patt*, No. 12-4107, 2013 US App LEXIS 9492, at *24 (10th Cir. May 10, 2013) (unpublished). However an expert is required where "the effects of delay may be so subtle or complex that a lay jury cannot adequately determine the issue of causation without expert assistance." *Id.*

The subjective component requires "evidence of the prison official's culpable state of mind," which may be fulfilled by showing that the official "[knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference." *Id.* (brackets and internal quotation marks omitted). "To prevail on the subjective component, the prisoner must show that the defendant[ ] knew [that the prisoner] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (internal quotation

6

marks omitted).  The pertinent question is whether the prisoner's symptoms were such that the defendant "knew the risk to the prisoner and chose (recklessly) to disregard it[.]"  *Mata*, 427 F.3d at 753.  Additionally, "[a] prison medical professional who serves 'solely . . . as a gatekeeper for other medical personnel capable of treating the condition' may be held liable under the deliberate indifference standard if she 'delays or refuses to fulfill that gatekeeper role.'"  *Mata*, 427 F.3d at 751 (quoting *Sealock*, 218 F.3d at 1211).

Ultimately, "Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"  *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  Mere negligence is not enough.  *Id.*

<u>Legal Standard for Objections to a Magistrate Judge's Recommendations</u>

A district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which is objection is made." 28 U.S.C. § 636(b)(1).  "[O]bjections to the magistrate judge's report must be both timely and specific to preserve an issue for de novo review by the district court[.]"  *United States v. 2121 East 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Where a plaintiff fails to give any particular reason for objecting to the PF&RD, his objections are not specific enough to present any issue for review. *See id.* ("Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review.").  However, theories or arguments raised for the first time in objections to a magistrate judge's report are deemed waived.  *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001).

7

## Medical-Need Claims[3]

Duran suffered a hand injury from an altercation with another inmate on December 10, 2007.  [Doc. 145] at 16.  He cut his finger on the other inmate's teeth.  *Id.* at 17.  Two CCADC nurses examined the cut, cleaned it thoroughly with peroxide, and sent him to Plains Regional Medical Center ("PRMC") for further treatment.   *Id.*   At PRMC, he was examined by a Dr. Kamermans.  *Id.*  Dr. Kamermans examined the wound and ordered X-rays, a tetanus shot, and antibiotics.   *Id.*   Dermabond, a liquid adhesive, was used to close the wound.   *Id.* Dr. Kamermans ordered that no creams or ointments should be applied to the wound and that Plaintiff should be returned to the ER if there were any acute changes to the wound.  *Id.* at 17−18.   These instructions were given to CCADC medical personnel when Plaintiff returned from the hospital.

Shortly thereafter, the pain worsened, the wound re-opened, and an infection developed.  *Id.* at 18.  Plaintiff informed Defendant Curtis about these changes on Wednesday, December 12, 2007.  *Id.*  Curtis told Plaintiff that Dr. Donaldson would be in on Thursday, December 13, 2007, to do Plaintiff's follow-up, and she instructed him to keep gauze and "acewrap" over his hand in the meantime.  *Id.*  On Thursday, Dr. Donaldson viewed Plaintiff's wound through the cell foodport.  *Id.*  Plaintiff "informed [Dr. Donaldson] of what had happened and that the hospital doctor said for 'Plaintiff to see him.'"  *Id.*  However, Dr. Donaldson elected not to return Plaintiff to the ER, but instead told him, "It's just pus but your [sic] on antibiotics, and if I can't see you today I'll just see you next Thursday."  *Id.*

---

[3] These factual allegations from the Amended Complaint are taken as true.  *See Park Univ. Enters.*, 442 F.3d at 1244.

The following day, December 14, Defendant Curtis "had Plaintiff brought into the medical exam room."  [Doc. 145] at 19.  She examined the wound, cleaned it, and attempted to re-close it with Dermabond.  *Id.* at 19–20.  Plaintiff told her that the wound was getting infected.  *Id.* at 20.  Defendant Curtis "refused to return Plaintiff to the ER, stating 'you can see Dr. Donaldson on Thursday.'"  *Id.*  Over the next few days, Defendant Curtis continued to attempt to seal the wound.  *Id.*  Plaintiff complains that Defendant Curtis performed her examinations and provided this treatment "without a qualified medical provider's approval or supervision."  *Id.*  Defendant Curtis finally closed the wound successfully, which Plaintiff believes caused his infection to spread throughout his body.  *Id.*

The next Thursday (Dr. Donaldson's normal day to see patients at CCADC) would have been December 20, 2007.  On that day, however, Plaintiff was taken to court for arraignment.  *Id.* at 20.  Thus, he did not see Dr. Donaldson on December 20.

Plaintiff claims that on or around December 28, 2007, he was taken to a "substandard health clinic" where he was seen by a Dr. Lindo.  *Id*. at 23.  Plaintiff claims that Dr. Lindo prescribed antibiotics for him.  *Id.*  Plaintiff also claims that Dr. Lindo recommended an "emergency referral to an infectious disease specialist."  *Id.* at 24.

Seven days later, on January 4, 2008, Plaintiff was taken to see a Dr. George.  *Id*. at 24.  According to Plaintiff, "Dr. George extracted two white anaerobis [sic] maggots from the wound."  Dr. George took a bone culture, prescribed more antibiotics, and recommended that Plaintiff see an infectious disease specialist, as well as an orthopaedist for possible hand surgery.  *Id*.  On January 17, 2008, Plaintiff saw Dr. Timmons, an infectious disease specialist.  *Id.*  However, Plaintiff claims that Dr. Timmons "was unable to find the culture results performed by

M.D. George" and, thus, recommended a second culture. *Id.* Dr. Timmons also prescribed antibiotics and recommended that Plaintiff see an orthopeadist for "possible surgery." *Id.* at 24–25. Plaintiff alleges that Defendant Curtis failed to follow up on Dr. Timmons's recommendation for a second bone culture, which caused his infection to persist for an additional four or five months. *Id.* at 25.

On January 21, 2008, Plaintiff saw Dr. Cheema, an orthopaedist at University of New Mexico Hospital. *Id.* at 25–26. Dr. Cheema noted that the infection was clearing up. *Id.* at 26. Dr. Cheema ordered X-rays and recommended physical therapy and a follow-up appointment in six weeks for final evaluation. *Id.* Plaintiff alleges that Defendant Curtis failed to follow up on Dr. Cheema's recommendation for physical therapy, which deprived him of a fully functional and pain-free hand. *Id.*

On April 2, 2008, Plaintiff saw Dr. Donaldson, who determined that Plaintiff's hand was well-healed. *Id.* Dr. Donaldson informed Plaintiff that Dr. Cheema agreed that Plaintiff's hand was healed and that surgery was not needed. *Id.* Plaintiff believed that Dr. Donaldson was wrong about Dr. Cheema's orders, so he requested copies of the records. *Id.* at 27. Plaintiff claims that two other nurses at CCADC told Plaintiff that Defendant Curtis attempted to copy over Plaintiff's medical records. *Id.* Plaintiff claims that Nurse Marie "brought to Plaintiff a copy of the altered medical note and medical order which imprinted note's written by [Dr.] Donaldson." *Id.* (errors in original).

Plaintiff was transferred to the New Mexico Department of Corrections ("NMDOC") on May 8, 2008, *id.* at 27–28, where he remained until December 4, 2008, at which time, he was returned to CCADC, *id.* at 29. While at NMDOC, Plaintiff reports that X-rays were taken of his

hand, which showed "deformity." *Id.* at 28. He also reports that he had a follow-up appointment on September 15, 2008, with Dr. Cheema, who recommended joint replacement. *Id.* The surgery was scheduled for December 1, 2008. *Id.* Apparently, the surgery was not performed. *See id.* Plaintiff reports that he made two attempts to reschedule the surgery, neither of which was successful, but he provides no further explanation as to why the surgery was not performed. *Id.* Ultimately, Plaintiff initiated this action on August 4, 2009. [Doc. 1].

<u>Medical-Need Claims that Judge Vidmar Found Should Survive</u>

Although Plaintiff makes numerous allegations against Defendant Curtis, Judge Vidmar found that only two were sufficient to state a claim under the Eighth Amendment:

1.  Failing to get a bone culture as ordered by Dr. Timmons, which caused the infection to last four or five months longer. [Doc. 145] at 25, 35.

2.  Refusing to follow Dr. Cheema's plan for physical therapy and follow-up, which deprived Plaintiff of having a fully functional hand. *Id.* at 26.

Judge Vidmar found that Plaintiff had not expressly alleged that Defendant Curtis was *aware* of Dr. Timmons's or Dr. Cheema's recommendations. [Doc. 263] at 10–11 (citing [Doc. 145] at 25, 26, 35). However, because Plaintiff is proceeding pro se, and because his filings must be liberally construed, Judge Vidmar read Plaintiff's Amended Complaint as stating that Defendant Curtis was aware of the recommendations and was deliberately indifferent to them. *Id.* He found that if Drs. Timmons and Cheema ordered treatment for Plaintiff, and if Defendant Curtis were aware of those orders, and if she ignored the orders, and if her ignoring them caused the alleged injuries, then a reasonable jury could find that Defendant Curtis was deliberately indifferent. *Id.* at 11 (citing *Palmer v. Board of Comm'rs for Payne Cnty.*, No. 11-6021, 441 F. App'x 582, 584–85 (10th Cir. Oct. 14, 2011) (unpublished) (affirming

district court's denial of qualified immunity to jail administrator who ignored doctor's specific instructions to return inmate to the ER if his pain increased).   Therefore, he recommended denying Defendant Curtis's motion for qualified immunity and for judgment on the pleadings with respect to Plaintiff's claims related to the bone culture and physical therapy.  *Id.* at 12.

Defendant Curtis objected on several grounds.  First, she objected on the ground that the alleged harms are not sufficiently serious to meet the objective prong of *Sealock*.  [Doc. 264] at 7.  On de novo review, the Court agrees.  On granting summary judgment to Dr. Donaldson on August 30, 2013, the Court found that the ultimate harms alleged, decreased grip strength and pain, "do not rise to the level of violating the Constitution and, thus, do not meet the objective prong . . . ."  [Doc. 242] at 17.   The allegations against Defendant Donaldson are the same as those against Defendant Curtis.   [Doc. 145] at 25, 26.   They were not sufficient against Defendant Donaldson, and they are not sufficient against Defendant Curtis.   The Court will sustain Defendant Curtis's objection as to the objective prong.

Defendant Curtis also argues, as to the subjective prong, that Judge Vidmar erred in inferring an allegation of awareness in Plaintiff's Amended Complaint.  [Doc. 264] at 4–6.  She argues that because a culpable state of mind is a necessary element of a claim for deliberate indifference to serious medical need, it was error to supply such allegation.  *Id.* at 4.  She argues that Plaintiff knows that a culpable state of mind is a necessary element because he himself has cited cases and made arguments on the issue.  *Id.* at 6.  Additionally, she points out that Plaintiff did expressly allege that CCADC medical personnel were aware of Dr. Kamermans's orders, *id.* at 5 (citing [Doc. 145] at ¶¶ 64–66), whereas the Amended Complaint does not similarly allege that Defendant Curtis or other CCADC medical personnel were aware of Dr. Cheema's or

Dr. Timmons's orders, *id.*  The Court agrees.  Supplying the missing allegation—that Defendant Curtis was aware of Dr. Timmons's or Dr. Cheema's recommendations—is not warranted, even liberally construing the Amended Complaint.

Moreover, granting leave for Plaintiff to amend his complaint is also not warranted. First, considering that the case was initiated more than *four years* ago and considering that Plaintiff has already been granted leave to amend his Complaint six times, further amendment would be inappropriate.  Plaintiff has not shown the extraordinary circumstances required to permit a seventh amendment to his complaint.  *See* [Doc. 162] at 9 (filed on June 20, 2012) (requiring extraordinary circumstances); [Doc. 236] at 1–2 (filed on July 16, 2013) (same). Second, and more importantly, Plaintiff does not request leave to amend his complaint to allege awareness on Defendant Curtis's part.  *See* [Doc. 269] at 11.  He does not argue that, given the opportunity to amend his complaint, he would allege that she was aware.  *See id.*  Rather, he changes course and argues that Defendant Curtis may have failed to follow professional standards of care or CCADC policies.  *Id.*  For all these reasons, the Court will sustain Defendant Curtis's objection as to the subjective prong.  Because Plaintiff's Amended Complaint fails to state a claim against Defendant Curtis for deliberate indifference to serious medical need. Defendant Curtis is entitled to qualified immunity and to judgment on the pleadings.

<u>Medical-Need Claims that Judge Vidmar Found Should Not Survive</u>

Plaintiff asserts that Defendant Curtis was deliberately indifferent to his serious medical needs in numerous other ways, which Judge Vidmar found did not state a claim for relief.[4] These claims include:

---

[4] Plaintiff asserts no claim against Defendant Curtis for failing to follow Dr. Cheema's recommendation for surgery.  [Doc. 257] at 20.

1. Refusing to return to Plaintiff to the ER when Plaintiff first told Defendant Curtis that the cut was getting infected and, instead, telling Plaintiff to wait until Thursday to see Dr. Donaldson.  [Doc. 145] at 19–20, 34.

2. Attempting to reclose the wound without supervision or authorization from Plaintiff's "treating doctor."  [Doc. 145] at 18–20, 34.

3. Refusing to house Plaintiff in the jail's medical pod once she learned of the infection. [Doc. 145] at 35.

4. Refusing to return to Plaintiff to the ER and instead making an appointment for him at, and sending him to, a "substandard" medical clinic.  [Doc. 145] at 23, 34.

5. Altering his medical records.  [Doc. 145] at 27, 34.

 Plaintiff alleges that these failures resulted in pain and an inability "to enjoy the benefits of controlling his anxiety through lifting weights, playing handball and softball as his grasping ability is weak in the injured area."  *Id.* at 29.  Defendant Curtis argues that these allegations—even if true—do not amount to deliberate indifference.  [Doc. 232] at 10–15.

In his PF&RD, Judge Vidmar analyzed the cases cited by Plaintiff.  [Doc. 263] at 13–16 (citing  *Dicino v. Renfro*, No. 12-cv-01274-WYD-KLM, 2013 WL 2317242 (D. Colo. May 28, 2013) (unpublished) (finding that the plaintiff stated a claim for deliberate indifference to serious medical need where he received no treatment for two months for a painful, full-body rash, while he waited to see a physician and then never received the prescribed steroids); *Palmer*, 441 F. App'x at 584–85 (affirming district court's denial of qualified immunity to jail administrator who ignored doctor's specific instructions to return inmate to the ER if his pain increased and instead denied the plaintiff treatment altogether); *Malles v. Lehigh Cnty.*, 639 F. Supp. 2d 566 (E.D. Pa. 2009) (granting summary judgment in favor of the defendant prison officials where jail nurses examined and advised the plaintiff every day for five days, during which time the

14

plaintiff's diagnosis and treatment of methicillin-resistant Staphylococcus aureus ("MRSA") was delayed).

Judge Vidmar found that in contrast to *Dicino* and *Palmer*—where the inmates received no treatment for their medical conditions and were ignored—here, Plaintiff received timely, consistent, and ongoing treatment for his hand.  [Doc. 263] at 15.  Plaintiff argued that Curtis was constitutionally obligated to return him to the ER because the ER doctor had ordered that he be returned if his would showed any "acute changes."  Judge Vidmar disagreed.  He found that the course of action by Defendant Curtis, as described in the Amended Complaint, does not show that she knew of and disregarded an excessive risk to Plaintiff's health.  [Doc. 263] at 12–16. To the extent that Defendant Curtis was aware that Plaintiff needed medical attention for Plaintiff's hand, Judge Vidmar found that she took reasonable steps to abate any risk to his health.  *Id.* Judge Vidmar concluded that, even if everything that Plaintiff alleged were true, such allegations did not amount to a constitutional violation by Defendant Curtis.  *Id.* at 16 (citing *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999) (holding that an inmate's preference or belief that another course of treatment was warranted is not evidence of a constitutional violation.).   Because Judge Vidmar found that Plaintiff's allegations did not show that Defendant Curtis violated his Eighth Amendment right, he recommended granting her qualified immunity and judgment on the pleadings with respect to these claims.

Plaintiff objected on numerous grounds, most of which are rooted in the same argument, i.e., that Defendant Curtis was constitutionally obligated to return Plaintiff to the ER at the first sign of infection because the ER doctor had ordered that he be returned if his would showed any "acute changes."  [Doc. 269] at 3 ("Curtis was not authorized to interrupt the prescribed

treatment plan by taking over the doctor[']s specific instructions."); *id.* at 4 ("My argument is that Defendant Curtis should have followed the doctor's 'prescribed orders,' not that I should had [sic] received 'different treatment.'); *id.* at 5 ("Defendant Curtis was deliberately indifferent to medical care when she subjected me to 'treatments' that were inconsistent with the treating doctor's specific instructions by repeatedly (over a three or four day period) applying medical durmabond [sic] to the infected wound."); *id.* at 8 ("[My complaint is not about my preference of treatments; rather,] Defendant Curtis <u>was aware of a doctor's prescribed treatment plan</u>, and <u>she failed to follow the doctor's specific instructions</u> . . . ." (emphases in original)).  Plaintiff also objects because he says that Judge Vidmar disregarded the fact that it was patently unreasonable for Defendant Curtis to apply Dermabond to the infected wound.  *Id.* at 7–8 (citing *Self v. Crum*, 439 F.3d 1227 (10th Cir. 2006)).

On de novo review, the Court finds that the course of action by Defendant Curtis, as described in the Amended Complaint, does not show that she knew of and disregarded an excessive risk to Plaintiff's health.  The Court rejects Plaintiff's argument that Defendant Curtis violated his Eighth Amendment right when she failed to return him to the ER at the first sign of infection.  The Amended Complaint does not plausibly allege that Defendant Curtis's attempts to treat Plaintiff's hand were "patently unreasonable."  The Court finds that, as alleged in the Amended Complaint, when Plaintiff notified Defendant Curtis that he needed medical attention for his hand, she took reasonable steps to abate any risk to his health.

Next and relatedly, Plaintiff objects to Judge Vidmar's analysis of *Malles* because as Plaintiff sees it *Malles* is distinguishable from the instant case.  [Doc. 269] at 3–4.  Plaintiff argues that, unlike this case, the jail nurses in *Malles* did not disregard any doctor's instruction

and the plaintiff did not end up with "serious pain or substantial harm." *Id.* at 3–4, 7. Plaintiff also quotes *Malles* to support his position that the symptoms he presented to Curtis required emergency care. *Id.* at 2–4.

On de novo review, the Court will overrule the objection. Even considering Plaintiff's arguments about how to interpret *Malles*, Defendant Curtis's course of action, as alleged in the Amended Complaint does not show that Defendant Curtis knew of and disregarded an excessive risk to Plaintiff's health. Rather, the allegations contained in the Amended Complaint show that when Plaintiff notified Defendant Curtis that he needed medical attention for his hand, she took reasonable steps to abate any risk to his health.

Plaintiff further objects because he believes that "the purposeful destruction of [his] medical records[] was intentionally interfering with [his] right to medical care, which constitutes deliberate indifference." [Doc. 269] at 9 (citing *Wesley v. Davis*, 333 F. Supp. 2d 888, 894 (C.D. Cal. 2004)). On de novo review, the Court will overrule the objection. Defendant Curtis has raised the defense of qualified immunity, and accordingly, Plaintiff must show that she violated his constitutional right and that such right was clearly established at the time of the alleged violation. *See Schwartz*, 702 F.3d at 579. Even if Plaintiff's allegations were true,[5] he fails to show that they amount to violation of a *clearly established* constitutional right. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008) ("Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly

---

[5] The Amended Complaint alleges that on April 2, 2008, Plaintiff was seen by Dr. Donaldson in his office at the jail. Dr. Donaldson informed Plaintiff that Dr. Cheema believed that Plaintiff's hand was complete healed and that surgery was not needed. Plaintiff was convinced that this was incorrect, so he requested a copy of "the medical notes." Defendant Curtis "attempted to xerox over the notes by placing a clean piece of paper over the notes and then ran one copy for filing and then threw away the original." Plaintiff reports that he discovered this when two other nurses told him about it. Plaintiff alleges that the one of the other nurses brought Plaintiff copies of the original and the altered notes. [Doc. 145] at 26–27; *see also id.* at 34.

established weight of authority from other courts must have found the law to be as the plaintiff maintains.").

Finally, Plaintiff objects because the PF&RD does not address the 23-day delay between when "Defendant Curtis first applied the Dermabond on December 12–13, 2007, [and when Plaintiff] was sent to an outside medical provider for surgery on January 4, 2008." *Id.* at 8–9. On de novo review, the objection is overruled. Plaintiff did not raise this particular issue before Judge Vidmar, and therefore, it is waived. *See Garfinkle*, 261 F.3d at 1031 (theories or arguments raised for the first time in objections to a magistrate judge's report are deemed waived).

Having considered de novo the portions of the PF&RD to which Plaintiff objects, the Court finds that Plaintiff's allegations do not show that Defendant Curtis violated his Eighth Amendment right. Rather, Plaintiff's complaint is that he should have received *different* treatment. He believes that Defendant Curtis should have returned him to the ER when the first signs of infection appeared. He argues that Curtis was constitutionally obligated to return him to the ER because the ER doctor had ordered that he be returned if his would showed any "acute changes." Plaintiff is incorrect. The course of action by Defendant Curtis, as described in the Amended Complaint, does not show that she knew of and disregarded an excessive risk to Plaintiff's health. To the extent that Defendant Curtis was aware that Plaintiff needed medical attention for his hand, she took reasonable steps to abate any risk to his health. Even if everything that Plaintiff alleges were true, such allegations do not amount to a constitutional violation by Defendant Curtis. *See Perkins*, 165 F.3d at 811 (holding that an inmate's preference or belief that another course of treatment was warranted is not evidence of a constitutional

18

violation.).  Because Plaintiff's allegations do not show that Defendant Curtis violated his Eighth Amendment right, she is entitled to qualified immunity and judgment on the pleadings with respect to the medical-need claims.

### Psychiatric-Need Claims

Plaintiff alleges that Defendant Curtis violated the Eighth Amendment by refusing to seek timely psychiatric care for him between October 2007 and March 2008.  [Doc. 145] at 12−13.   Plaintiff complains that as a result of Defendant Curtis's alleged deliberate indifference to his serious psychiatric need, he "suffered an extreme lack of control" on December 10, 2007, when he struck another inmate, thereby injuring his own hand.  *Id.*

Specifically, the Amended Complaint alleges that Defendant Curtis was aware of Plaintiff's mental illness and that Plaintiff asked Curtis to obtain Plaintiff's psychotropic medications from a family member.  *Id.* at 11.  Plaintiff also informed Curtis of a mental health appointment he had with an outside treatment provider and told her that he needed to see Dr. Donaldson about his anxiety attacks and leg cramps.  *Id.*   Then, without an examination, Dr. Donaldson ordered Plaintiff's psychotropic medications, Risperdal and Seroquel.  *Id.* Defendant Curtis rescheduled Plaintiff's outside mental health treatment appointment for an unknown reason, and Plaintiff missed the rescheduled appointment due to transportation issues, which caused the outside provider to discontinue Plaintiff's services.  *Id.* at 12.

Defendant Curtis was aware on December 7, 2007, of Plaintiff's "progressed anxiety" because Plaintiff had submitted a medical request for increased anti-anxiety medication.  *Id.* at 14.  On December 10, 2007, Plaintiff's "mental disorder reached emergency proportion's [sic] resulting in [his] striking another inmate causing severe injuries[.]"  *Id.* at 16.  Plaintiff also filed

a grievance on February 3, 2008, against Defendant Curtis because she had "interfered" with his counselor's recommendation to set an appointment with a psychiatrist in Roswell. *Id.* at 29. However, Plaintiff saw a psychiatrist in March of 2008. *Id.* at 12. Plaintiff asserts that Defendant Curtis was deliberately indifferent to his serious psychiatric needs by failing to fulfill her gatekeeper role to get Plaintiff adequate psychiatric treatment before the assault took place.[6] *Id.* at 37.

Judge Vidmar found that these allegations did not plausibly state a claim for relief. [Doc. 263] at 17–18. He found that—even if true—the allegations in the Amended Complaint did not show that Defendant Curtis was aware of a substantial risk to Plaintiff's health. *Id.* Plaintiff was receiving psychotropic medications, including at least one for anxiety, before he struck the other inmate. [Doc. 145] at 11, 14. Prior to the assault, Defendant Curtis was aware that Plaintiff's anxiety was worsening but she was not aware of anything more serious. *Id.* at 14. In fact, Plaintiff's mental illness had never before caused him to hit anyone, and the assault was a "deviation from his normal attitude and character." *Id.* at 16. Judge Vidmar found that Plaintiff had not alleged any facts that could show that Defendant Curtis was aware of a *substantial* risk to Plaintiff's health or that she disregarded any such risk. [Doc. 263] at 17–18 (citing [Doc. 145]).

---

[6] Plaintiff does not allege a claim against Defendant Curtis for interfering with his counselor's recommendation to have an appointment with a psychiatrist in Roswell after the assault. [Doc. 257] at 26 (explaining that no such claim is asserted); *see* [Doc. 145] at 29 (mentioning the factual allegation in the Amended Complaint). In his objections, Plaintiff apparently attempts to clarify his intention with respect to this allegation. [Doc. 269] at 13. "[T]his interference claim by Curtis is one of several examples of interference[,] and the claim involves progressed anxiety and aggression[,] which are serious medical needs. Nevertheless, the interfering claim is relevant as a claim." *Id.* at 13 (internal citation omitted).

Plaintiff objects on numerous grounds.  First, Plaintiff conclusorily insists that he had a serious psychiatric need that was disregarded.  [Doc. 269] at 10–11, 13–16.  Plaintiff argues that Curtis did not have to know exactly what was wrong with him, only that he had a serious problem and disregarded it anyway.  *Id.*  Plaintiff asks for discovery to find out whether Defendant Curtis may have failed to follow any published standards of care or CCADC procedures.  *Id.* at 11.  Plaintiff argues that if Curtis did fail to follow a published standard of care of jail procedure, she as a gatekeeper, "could not possibly argue that she was unaware of a substantial risk of harm when [Plaintiff] complained of mental health problems."  *Id.* at 11–13 (citing *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1190–91 (9th Cir. 2002) (considering county jail's policies on the issue of whether the county understood that certain risks were substantial)).

On de novo review, the Court will overrule the objections.  To the extent that Plaintiff objects to the finding that his allegations fail to state a claim, the Court is not persuaded.  The allegations in the Amended Complaint regarding the psychiatric-care claim—even if true—do not show that Defendant Curtis was aware of a substantial risk to Plaintiff's health.  To the extent that Plaintiff objects on the ground that he is entitled to discovery, the objection is overruled as waived.  *See Garfinkle*, 261 F.3d at 1031 (theories or arguments raised for the first time in objections to a magistrate judge's report are deemed waived).  Besides, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Finally, Plaintiff objects because he believes that Judge Vidmar impermissibly considered matters outside the pleadings. *Id.* at 15 (citing [Doc. 263] at 11). On de novo review, the objection is overruled. Judge Vidmar cited to matters outside the pleadings only to discuss— and reject—one of Defendant Curtis's arguments. Judge Vidmar did not rely on any matters beyond the pleadings in his findings or recommendations. *See* [Doc. 263] at 11. The objection is without merit.

On de novo review, the Court finds that Plaintiff's allegations regarding his psychiatric-care claims, even if true, do not show that Defendant Curtis violated his constitutional rights. Accordingly, Defendant Curtis is entitled to qualified immunity and judgment on the pleadings for Plaintiff's claim for deliberate indifference to psychiatric needs.

<u>Conclusion</u>

Taking the allegations in the Amended Complaint as true, the Court finds that they are insufficient to state claims against Defendant Curtis for deliberate indifference to serious medical or psychiatric needs. Defendant Curtis is entitled to qualified immunity and judgment on the pleadings as to all claims asserted against her, which should be **DISMISSED with prejudice**.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendant Tamara R. Curtis's Motion for Judgment on the Pleading on the Basis of Qualified Immunity [Doc. 231] be **GRANTED** and that all claims against her be **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

_____
**M. CHRISTINA ARMIJO**
**Chief United States District Judge**