IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LEO L. DURAN,

    Plaintiff,

v.                                                                                              No. 09-cv-0758 MCA/SMV

CURRY CNTY. ADULT DET. CTR. et al.,

    Defendants.

## MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on the Board of Commissioners of Curry County's ("the Board's") Motion . . . Seeking Dismissal of Claims of "Denial of Due Process Hearings" [Doc. 286] ("Motion"), filed on April 23, 2015. After being granted an extension of time, Plaintiff[1] filed a Response and Objections . . . ("Response") on June 22, 2015. [Doc. 294]. The Board replied on July 9, 2015. [Doc. 303]. The Honorable M. Christina Armijo, Chief United States District Judge, referred this case to me for analysis and a recommended disposition. [Doc. 189]. Having reviewed the record, the briefing, and the relevant law, and being otherwise fully advised in the premises, I find the facts alleged by Plaintiff, even if true, do not state a claim against the Board. Thus, I respectfully recommend that the Motion be GRANTED and that Plaintiff's claim of "Denial of Due Process Hearings" be DISMISSED with prejudice.

---

[1] At all times relevant to this suit, Plaintiff has been incarcerated and proceeding pro se and *in forma pauperis*. *See* Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 [Doc. 1] ("Complaint"); Order [Doc. 3]. The Court liberally construes Plaintiff's filings because he is appearing pro se. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

**Background**

Plaintiff Leo Duran is a pro se prisoner litigant. He filed his original complaint pursuant to 28 U.S.C. § 1983 on August 4, 2009, claiming various constitutional violations arising from allegedly inadequate medical treatment and other alleged deprivations while incarcerated at the Curry County Adult Detention Center ("CCADC"). [Doc. 1]. The Amended Complaint[2] raises three claims against the Board: "Deliberate Indifference to [the Need for] Psychiatric Care" (Claim "B"), "Deliberate Indifference to Court Access" (Claim "C"), and "Denial of Due Process Hearings" (Claim "D").[3] This PF&RD addresses only Plaintiff's claim for "Denial of Due Process Hearings."

Plaintiff's Amended Complaint alleges as follows: On October 6, 2007, Plaintiff was booked in CCADC on misdemeanor charges. [Doc. 145] at 10, ¶ 16. Long before his detention, Plaintiff had been diagnosed with several mental illnesses, including paranoid schizophrenia, bipolar spectrum disorder, severe anxiety, and impulse control problems. *Id.* ¶ 20. CCADC administration was aware of Plaintiff's mental illnesses at the time of his booking. *Id.* at 10–11 ¶ 21–23. The booking officers "followed a longstanding custom and practice of placing inmates with known mental disorders in punitive segregation" and housed

---

[2] Through various amendments, the operative pleading now consists of the Proposed Amended Complaint [Doc. 145] (as amended by [Doc. 162] magistrate judge's recommendations on same) (collectively "Amended Complaint").

[3] The Proposed Sixth Amended Complaint [Doc. 145] also claimed "Deliberate Indifference to [Inh]umane Living Conditions" (Claim "E") against the Board. [Doc. 145] at 42–42 ¶¶ 196–197. Essentially, Plaintiff claimed that the Board's refusal to provide adequate psychiatric care to other inmates caused the inmates to deteriorate and throw feces, which amounted to deliberate indifference to Plaintiff's own living conditions. *Id.* The Court did not allow the claim concerning inhumane living conditions to go forward, because Plaintiff "failed to allege a plausible causal link between the policy and the alleged constitutional violation." [Doc. 162] at 13, *adopted by* [Doc. 168] at 2 ("Deliberate Indifference to [Inh]umane Living Conditions" [claim] may not proceed against any Defendant because it is futile."). Plaintiff reiterates this claim in his Response, *see* [Doc. 294] at 3–4, and argues throughout his Response that the conditions of his confinement resulted from the actions of other inmates. However, Plaintiff cannot re-litigate his claim of deliberate indifference to inhumane living conditions. His arguments attempting to do so are unavailing.

Plaintiff accordingly.  *Id.* ¶ 17.  Plaintiff did not have a hearing before his placement in "punitive segregation."  *Id.* at 41 ¶ 195.

Plaintiff alleges the following concerning his detention in "punitive segregation":

1. Neither Plaintiff nor the other inmates received mental health counseling, psychiatric care, adequate psychotropic medication, or adequate monitoring of psychotropic medications.  *Id.* ¶ 19.

2. Plaintiff did not have access to activities enjoyed by the general population, such as "[television], radio, canteen/commissary, group religious services[,] and education programs in which inmates could obtain literature."  *Id.* at 41 ¶ 195.

3. Those in segregation "often threw feces in the hallway where Plaintiff also was living."  *Id.* at 13 ¶ 36.  Despite cleaning and verbal lectures to the inmates, "such conditions . . . continued nonstop for several months."  *Id.* ¶ 38.

Plaintiff claims that his placement in "punitive segregation" violated his rights under the Due Process Clause.[4]  *Id.* at 41 ¶194.  He claims that the Board's "failure to adequately train" and use proper procedures resulted in this constitutional violation.  *Id.* ¶ 195.

The Board now moves to dismiss Plaintiff's claim, arguing that the facts he alleges do not show that his detention was imposed for the purpose of punishment, rather than as incident to a legitimate government purpose.  [Doc. 286] at 3–6; [Doc. 303] at 3–6.

---

[4] Plaintiff's present claim is similar to his claim against Defendant Lois Bean, contained in an earlier iteration of his Complaint, for lack of due process in placing Plaintiff in isolation for approximately 11 to 12 months. [Doc. 17-1] at 13, 14, 18.  In that claim, Plaintiff alleged that he and others were placed in isolation "as a way to deal with mentally ill inmates," [Doc. 17-1] at 15, and that he was denied privileges available to the general population, such as television and canteen.  In a PF&RD [Doc. 131], the Honorable Don J. Svet, United States Magistrate Judge, applied the test found in *Bell v. Wolfish*, 441 U.S. 520 (1979), to determine whether the conditions and restrictions amounted to impermissible "punishment" of a pretrial detainee.  Judge Svet concluded that Plaintiff's allegations of punishment lacked specificity and were inconsistent with his allegation that the isolation cells were used to segregate the mentally ill, and he recommended dismissal of the claim.  [Doc. 131] at 6–7, 11–12.  Ultimately, the Court adopted Judge Svet's findings and dismissed the claim against Defendant Bean with prejudice.  [Doc. 137] (adopting PF&RD); [Doc. 144] at 8–9 (allowing delayed objections, reviewing claim concerning Plaintiff's placement in an isolated cell de novo, overruling objection, and finding claim to be meritless).  The Court held that, "[n]otwithstanding his use of the label 'punitive,' neither the Amended Complaint nor the proposed amended complaint plausibly allege[d] that Duran was placed in isolation for purposes of punishment."  [Doc. 144] at 9 (overruling objections).  Plaintiff was since allowed to amend his Complaint.  *See* [Docs. 145, 162].  Even as amended, Plaintiff's allegations fail to state a claim for denial of due process, as discussed below.

## Standard for Motions to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). With respect to the Rule 12(b)(6) motion, plausibility means that the plaintiff must plead facts that allow "the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663. The factual allegations in the complaint against defendants "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).

The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," because "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotations omitted). "[A] plaintiff must 'nudge [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (internal citation omitted).

Stated differently, the Rule 12(b)(6) analysis requires two inquiries. First, courts identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations that are legal conclusions, bare assertions, or merely conclusory. *Iqbal*, 556 U.S. at 678. Second, courts consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 680–81. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *See id.* at 682–83. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.* at 678.

At this stage of litigation the Court presumes that all Plaintiff's factual allegations—but not legal conclusions—are true. *See Iqbal*, 556 U.S. at 884. Moreover, the Court liberally construes Plaintiff's filings because he is appearing pro se. *Hall*, 935 F.2d at 1110.

### Legal Standard for Due Process Claim

Due process prohibits a pretrial detainee from being punished prior to a lawful conviction.[5] *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Peoples v. CCA Det. Ctrs.*, 422 F.3d 1090, 1106 (10th Cir. 2005), *vacated in part on other grounds on reh'g en banc*, 449 F.3d 1097 (10th Cir. 2006). However, the Government may subject a pretrial detainee to the conditions and restrictions of incarceration "so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell*, 441 U.S. at 536–37; *see Peoples*, 422 F.3d at 1106.

"[W]hether a condition of pretrial detention amounts to punishment turns on whether the condition is imposed for the purpose of punishment or whether it is incident to some other

---

[5] The Court assumes, without finding, that Plaintiff was a pretrial detainee at the time of the alleged constitutional violations.

5

legitimate government purpose." *Peoples*, 422 F.3d at 1106 (citing *Bell*, 441 U.S. at 538). A plaintiff may establish unconstitutional pretrial punishment by "showing an expressed intent to punish on the part of detention facility officials." *Bell*, 441 U.S. at 538 (emphasis added). Absent such a showing, the "determination generally will turn on whether an alternative purpose to which the [condition or] restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it." *Bell*, 441 U.S. at 538; *Littlefield v. Deland*, 641 F.2d 729, 731 (10th Cir.1981). The Supreme Court explains:

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate [governmental] goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Bell*, 441 U.S. at 539. This standard springs from constitutional requirements; it "does not permit a court to impose on prison administrators its idea of how best to operate a detention facility." *Littlefield*, 641 F.2d at 731.

### Legal Standard for Claims against Municipalities

A state political subdivision, such as a County, may not be held liable under 42 U.S.C. § 1983 "for an injury inflicted solely by its employees or agents." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). However, liability may attach where "the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (quoting *Monell*, 436 U.S. at 692). "It is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983." *City of Canton v.*

*Harris*, 489 U.S. 378, 385 (1989) (internal quotation marks and alteration omitted). "[T]o establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010).

A county "cannot be held liable for constitutional violations when there was no underlying constitutional violation by any of its officers." *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009) (citing *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317–18 (10th Cir. 2002). That is, "[e]ven if . . . the policies, training, and supervision of the individual county defendants were unconstitutional, [a] county cannot be held liable where . . . the officers did not commit a constitutional violation." *Id.*; *see Trigalet v. City of Tulsa*, 239 F.3d 1150, 1156 (10th Cir. 2001) ("[A]bsent a constitutional violation by the individual police officers whose conduct directly caused [the] plaintiffs' [alleged] injuries, there can be no municipal liability imposed on the [city] on account of its policies, customs, and/or supervision with regard to the individual defendants.").

## Analysis

Plaintiff argues that his time in "punitive segregation" amounted to "punishment" so as to violate due process.[6] However, his allegations—even if true—do not establish an underlying constitutional violation for which the Board may be liable, regardless of its policies.

---

[6] In his Response, Plaintiff attempts to re-characterize his claim as one alleging an inadequate classification system and improper classification upon booking. [Doc. 294] at 10. Plaintiff's attempt is not persuasive, for several reasons. First, the Amended Complaint does not allege improper classification or an inadequate classification system, and Plaintiff has not been granted leave to amend his Complaint again. Moreover, amendment would be futile because the test used to determine whether a plaintiff has stated a claim for inadequate and improper classification as a pretrial detainee is the same as the test applied here. *Martinez v. Claussen*, 43 F. App'x 262, 263 (10th Cir. 2002) (affirming the district court's use and application of the test in *Bell v. Wolfish* to the plaintiff's claim concerning an inadequate classification system while he was a pretrial detainee); *Ortega v. Gonzales*,

First, Plaintiff has not alleged that CCADC officials intended to punish him by placing him in segregation. Despite Plaintiff's use of the phrase "punitive" to describe his housing, he alleges no express intent to punish on the part of CCADC officials. *See Bell*, 441 U.S. at 538. Nor do the facts alleged indicate any intent to punish by the CCADC officials who housed Plaintiff in segregation. Moreover, Plaintiff expressly states in his Response that he does not mean to argue that "the use of punitive segregation to house mentally ill inmates—or any inmate[—]is unconstitutional and equates to punishment." [Doc. 294] at 5. I find that Plaintiff has offered no allegation to show an "expressed intent to punish" on the part of CCADC officials. *See Bell*, 441 U.S. at 538.

On the contrary, Plaintiff's allegations suggest that his segregation was incident to some other legitimate government purposes, namely, a managerial decision to segregate mentally ill inmates. He alleges that CCADC administration knew of his various mental illnesses, *see* [Doc. 145] at 10–11, ¶¶ 21–23, and housed him accordingly, "follow[ing] a longstanding custom and practice of placing inmates with known mental disorders in punitive segregation," *id.* at 10 ¶ 17. And while Plaintiff conclusorily contends in his Response that his segregation was not done for "managerial reasons," [Doc. 294] at 9, his Amended Complaint alleges no facts to support that.

Further, Plaintiff's allegations as to the conditions and restrictions of "punitive segregation," even if true, do not amount to "punishment" so as to violate due process. *See Bell*, 441 U.S. at 538 (a condition or restriction constitutes punishment when it is "excessive in

---

No. 93-6232, 1994 WL 47162, at *3 (10th Cir. Feb. 17, 1994) (unpublished) (failure to adequately classify inmates held in custody is analyzed under the due process clause if the plaintiff was a pretrial detainee at the time of the alleged constitutional deprivation).

relation to the alternative purpose assigned to it"). Plaintiff likens his segregation to that in *Littlefield*, in which the Tenth Circuit held that confinement of a pretrial detainee in a "strip cell" for 56 days constituted a violation of due process. [Doc. 294] at 6–7. In *Littlefield*, the pretrial detainee—a mentally ill young man—was confined to a "strip cell" with no windows, no interior lights, no bunk, no floor covering, no toilet except a hole in the concrete floor flushed irregularly from the outside, and no clothing or bedding for most of confinement. *Littlefield*, 641 F.2d at 730. The pretrial detainee also engaged in throwing urine and feces back and forth with nearby inmates and had no means to wash his hands. *Id.*

In this case, Plaintiff alleges that inmates in "punitive segregation" did not receive adequate counseling, psychiatric care, psychotropic medications, or monitoring of psychotropic medications. [Doc. 145] at 10 ¶ 19. He alleges lack of access to activities available to the general population, including television, radio, commissary, group religious services, and education programs. *Id.* at 41 ¶ 195. Further, he alleges that other inmates "often threw feces in the hallway where Plaintiff was also living," *id.* at 13 ¶ 36, causing a "serious health hazard," *id.* at ¶ 47, and that these conditions "continued nonstop for several months," *id.* ¶ 38.

The alleged conditions and restrictions, though not ideal, do not come close to the conditions amounting to "punishment" in *Littlefield*. A detention facility "has legitimate interests that stem from its need to manage the facility in which the individual is detained." *Bell*, 441 U.S. at 540. "These legitimate operational concerns may require administrative measures that go beyond those that are, strictly speaking, necessary to ensure that the detainee shows up at trial." *Id.* Such operational concerns may justify, for example, restrictions on a pretrial detainee's access to mail and ability to prepare legal documents, allegedly inadequate

9

opportunities for fresh air and exercise, and restrictions on programs available to the general population, including religious programs. *Stevenson v. Smith*, Nos. 91-3384, 92-3002, 1992 WL 362916, at *2–4 (10th Cir. Nov. 18, 1992) (unpublished).  Even construing the Amended Complaint and Response liberally, I find that Plaintiff's allegations do not plausibly show that the conditions and restrictions he faced were not rationally attributable to the Board's legitimate operational concerns.[7]

I find, therefore, that Plaintiff's allegations, even if true, do not amount to "punishment" so as to violate due process.  Accordingly, I find no constitutional violation for which the Board may be held liable, and I recommend that Plaintiff's claim be dismissed.

## Conclusion

Plaintiff has been granted leave to amend his Complaint six times.  He has added new allegations to his claim for denial of due process since its earlier iterations, *see* [Doc. 17-1] at 13, 14, 18, and he has attempted to re-categorize his arguments in his Response, *see* [Doc. 294] at 10.  Despite these numerous attempts to state a claim for denial of due process, the allegations in the Amended Complaint—even if completely true—do not establish a constitutional violation for which the Board may be liable.  I find that further amendment would be futile.

**IT IS THEREFORE RESPECTFULLY RECOMMENDED** that the Board's Motion . . . Seeking Dismissal of Claims of "Denial of Due Process Hearings" [Doc. 286] be

---

[7] The Court has examined Plaintiff's allegations concerning lack of adequate psychiatric care during his detention at length and has found that there is no constitutional violation underlying Plaintiff's claims concerning his psychiatric care.  *See* Order Adopting Magistrate Judge's Proposed Findings and Recommended Disposition [Doc. 242] at 20–21 (dismissing Plaintiff's claim for deliberate indifference to the need for psychiatric care against Defendant Donaldson); Order Adopting in Part Magistrate Judge's Proposed Findings and Recommended Disposition [Doc. 280] at 21–22 (dismissing Plaintiff's claim for deliberate indifference to the need for psychiatric care against Defendant Curtis).  My finding here is based in part on the law of the case.

**GRANTED** and that Plaintiff's claim for "Denial of Due Process Hearings" be **DISMISSED with prejudice**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**